United States Court of Appeals,

Fifth Circuit.

No. 91-3775.

Shirley GOODMAN, Plaintiff-Appellee,

v.

Audrey LEE and Nikki N. Lee, Defendants-Appellants.

April 20, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM and DUHÉ, Circuit Judges, and DOHERTY,[1] District Judge.

PER CURIAM:

Shirley Goodman, sued Audrey Lee and Nikki Lee, widow and surviving child of Leonard Lee, who died in 1976 ("Lees"), for authorship and copyright and ownership rights to the 1956 Rock and Roll hit, "Let the Good Times Roll," recorded by Leonard Lee and Shirley Goodman when they performed professionally as the duo of "Shirley and Lee." This case has had a long and varied procedural history leading to and through the trial on January 14 and 15, 1988 which this Court need not fully recite at this time. However, after a jury found in favor of Plaintiff, Defendants filed a series of post trial motions, ostensibly pursuant to Federal Rules of Civil Procedure 50, 52, 59 and 60(b)(3). On February 19, 1988, the district court denied Defendants-Appellants' motion for a directed verdict. Subsequently, on February 13, 1990 the district court denied Defendants-Appellants' motion for judgment notwithstanding the verdict and in the alternative, motion for a new trial. Plaintiff-Appellee filed a notice of appeal of that order on March 14, 1990. The Fifth Circuit dismissed the appeal as the order appealed was not final on May 4, 1990, as the district court had not yet ruled on the Magistrate's recommendations pursuant to Defendants-Appellants' motion entitled as Rule 60(b)(3). The motion entitled as a Rule 60(b)(3) was denied by the district court on August 14, 1991, wherein Defendants appealed the entire judgment to this Court on September 11, 1991. Defendants-Appellants' appeal was opposed by Plaintiff in a motion pursuant to Federal Rules of Appellant

[1]District Judge of the Western District of Louisiana, sitting by designation.

Procedure 4(a)(1) and (4) claiming Defendant-Appellants' appeal was untimely, as appeal delays had expired on all issues except the denial by the district court of the motion entitled under Federal Rule of Civil Procedure 60(b)(3).

In response to Plaintiff's motion, Defendants-Appellants argued to this Court that the judgment issued by the district court was not a final judgment, as damages were not fixed with particularity and, therefore, this Court has no jurisdiction to hear the appeal of Defendant-Appellants. This Court was thus faced with the unique situation whereby Appellants were arguing this Court had no jurisdiction to hear an appeal filed by them and Appellee was arguing this Court had jurisdiction over the appeal which he had filed a motion to dismiss on other grounds.

For the following reasons, we DENY Plaintiff-Appellee's motion to dismiss Defendants-Appellants' appeal as untimely; however, nonetheless, dismiss the appeal, as this Court does not have jurisdiction over a judgment which is not final.

## BACKGROUND

Plaintiff-Appellee, Shirley Goodman, sued Audrey Lee and Nikki Lee, widow and surviving child of Leonard Lee, for authorship and copyright ownership rights to the 1956 Rock and Roll hit "Let the Good Times Roll," recorded by Leonard Lee and Shirley Goodman when they performed professionally as the duo of "Shirley & Lee" from 1953 through 1961. Plaintiff, Shirley Goodman, claimed that the duo wrote songs that took the form of questions and answers, Shirley writing the girl's lyrics and Leonard writing the boy's lyrics; thereafter, together they would hum a melody to go along with the words. Plaintiff claims that she and Leonard Lee wrote "Let the Good Times Roll" over a period of two (2) to three (3) weeks in 1956 in this manner. However, Leonard Lee obtained a copyright to the song, "Let the Good Times Roll," solely in his name and began receiving writer's royalties beginning in 1956. After Leonard Lee's death in 1976, his wife and son, Audrey and Nikki Lee, began to receive the writer's royalties and subsequently applied for and secured a renewal of the copyright to "Let the Good Times Roll" on April 30, 1984.

On July 9, 1985 Shirley Goodman filed suit against Audrey and Nikki Lee for declaratory judgment to establish her claims of co-authorship. Additionally, she sought an accounting from the

Lees for one-half of the royalties and other payments received from the song and "such damages plaintiff has sustained on [sic] such damages as to the Court shall appear proper."

On February 2, 1986 the Court granted a motion by the Lees for summary judgment, dismissing Plaintiff's action finding total diversity did not exist. Subsequently, on May 1, 1987 this Court reversed and remanded, holding that Plaintiff's claim for declaratory judgment to establish co-authorship of a copyrighted musical composition was a federal question arising under federal copyright laws and, therefore, federal question jurisdiction existed.

The Lees thereafter filed a motion for summary judgment, based on the three year statute of limitations provided in § 507(b) of the Copyright Act as well as laches arguing Shirley Goodman's twenty-nine (29) year delay in asserting her claim barred her claim. Defendant's motion for summary judgment was denied, the prescription issue referred to the merits, and the case fixed for trial on January 14, 1988.

Prior to trial, both sides substituted new counsel. Defendants filed a motion for a two week continuance to obtain "newly discovered" evidence located in the correspondence files of the copyright office, which Defendants alleged would show that Shirley Goodman had learned about Leonard Lee's sole authorship credit on the original copyright registration years before 1984. The Court denied Defendants' request for a continuance and stated that if proper, relief from a tainted judgment could be obtained under Federal Rule of Civil Procedure 60(b)(3).

This case was tried to a jury on January 14 and 15, 1988. The jury returned a verdict in favor of Plaintiff finding that Shirley Goodman was the co-author of the song "Let the Good Times Roll" and that she "did not know or should not have known" until 1984 that Leonard Lee listed himself as the sole author on the copyright register for "Let the Good Times Roll." The jury further found that Leonard Lee had concealed from Shirley Goodman the fact that he claimed sole credit for the song and that after Leonard Lee's death, Defendants, Nikki and Audrey Lee, also concealed from Shirley Goodman the fact that there were earnings from the song "Let the Good Times Roll." The district court entered a "Judgment" on February 29, 1988. The "Judgment" declared that Shirley Goodman "was entitled to one-half of the income from the song from 1956 to date, together with prejudgment

interest thereon, and all costs." No set amount of income or damages was awarded in the judgment. The Court furthered ordered, "that the registrar of copyrights shall rectify the records of the copyright office to indicate that plaintiff, Shirley Goodman, is the co-author and joint owner of the copyright registration and renewal thereof for the song entitled, "Let the Good Times Roll," and that the copyright records be corrected (1) to show Leonard Lee and Shirley Goodman as co-authors under Registration No. EU444079 through the first term of the copyright; and (2) to show Shirley Goodman as one-half owner of the renewal estate of the copyright to "Let the Good Times Roll" by issuance of a certificate of renewal under regulations of the copyright office.

On March 10, 1988 Defendants filed a motion for judgment notwithstanding the verdict, entitled as a motion under Federal Rule of Civil Procedure 50 and in the alternative, motion for a new trial entitled as a motion under Federal Rule of Civil Procedure 59(e). Additionally, on March 10, 1988 Defendants sought relief from judgment pursuant to a motion entitled under Federal Rule of Civil Procedure 60(b)(3). The district court on February 13, 1990 denied the Rule 50 motion by Defendants for a judgment notwithstanding the verdict and in the alternative, motion for a new trial. After referring the Defendants' motion entitled under Rule 60(b)(3) twice to the Magistrate for evidentiary hearing and after holding its own evidentiary hearing, the district court denied Defendants' motion entitled under Rule 60(b)(3) fraud on August 14, 1991. This appeal was filed on September 11, 1991 by Defendants-Appellants pursuant to the final district court ruling.

## ANALYSIS

The Court will first address Plaintiff-Appellee's allegation this appeal was not timely filed. Plaintiff-Appellee claims that the Lee's appeal was untimely with the exception of the denial by the district judge on August 14, 1991, of Defendants-Appellants motion entitled as a motion under Rule 60(b)(3) (fraud).

A judgment as a result of trial was entered on February 29, 1988; all the post-trial motions were filed by Defendants on March 10, 1988, within ten (10) days of the filing of the judgment.

In this circuit the bright line rule for determination of when appeal delays begin to run is stated in the holding *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 746 F.2d 278 (5th

Cir.1984), *reh'g granted,* 760 F.2d 86 (5th Cir.1985), *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986), and more recently in the opinion of this Court in *Prudential-Bache Securities, Inc. v. Fitch,* 966 F.2d 981 (5th Cir.1992). This Court has held the determination of appeal delays in regard to Federal Rules of Civil Procedure 59 and 60 is based on the time of filing and not the title given the motion.[2] Therefore, all delays for appeal were tolled until Judge Sear ruled on Defendants-Appellants' motion on August 14, 1991, and therefore, the appeal is timely. This Court recognizes Defendants-Appellants entitled their motion as one brought under Rule 60(b)(3); however, the motion was filed within the first ten (10) days and questioned the correctness of the judgment and therefore shall be treated as one filed under Rule 59(e) for purposes of determining the timing of notices of appeal. Therefore, delays for appeal did not begin to run until the district court's ruling on August 14, 1991. As appeal was filed on September 11, 1991, within the delays for appeal, this Court finds the appeal to have been timely filed. Therefore, Plaintiff-Appellee's motion to dismiss the Lees' appeal as untimely pursuant to Federal Rule of Appellant Procedure 4(a)(1) and (4) is DENIED.

This Court is now faced with interdependent threshold questions: As no amount was awarded in damages, is this a final judgment so that there is jurisdiction of Defendants-Appellants' appeal; did Plaintiff-Appellee waive her right to damages?

If Plaintiff waived her right to damages the first question would be rendered moot, therefore, we will examine the circumstances surrounding the rather unique argument by Plaintiff-Appellee's that Plaintiff's damages have been waived in this matter.

Plaintiff-Appellee sought relief in the original petition for the following:

(1) That this Court declare that Plaintiff is a joint owner of the copyright of the song "Let the Good Times Roll" and is entitled to one-half of the proceeds of said song;

(2) That this Court declare that the copyright renewal estate of property vested in Plaintiff on July 18, 1984;

---

[2] Recognizing that Federal Rule of Civil Procedure 59 and 60 may be used to correct similar errors, this Circuit has established a bright line rule for distinguishing Rule 59 motions from Rule 60 motions. If a motion is served within ten (10) days following the entry of judgment and draws into the question the correctness of the judgment, it will be treated as a Rule 59 motion for purposes of determining the timing of notices of appeal from the judgment. *Prudential Bache,* 966 F.2d at 984.

(3) That each of the Defendants account to Plaintiff for all gains, profit and advantage derived from the exploitation of the song "Let the Good Times Roll" and that Plaintiff shall receive one-half thereof;

(4) That Defendants and each of them be required to pay to Plaintiff such damages as Plaintiff has sustained on such damages as to the Court shall appear proper;

(5) That the Registrar of Copyrights be directed to rectify and to correct the copyright registrations and copyright renewal registrations to show authorship of "Let the Good Times Roll" by Plaintiff and to put title to all copyrights covering "Let the Good Times Roll" jointly in the name of Plaintiff and the Defendants;

(6) That Plaintiff shall receive interest on all sums wrongly retained by defendants for receipt of said sums to date; and

(7) That this Court grant such other relief as it deems appropriate.

In oral argument to this Court plaintiff's counsel, when questioned by this Court as to how a judgment could be final when there was no determination of damages, responded that Plaintiff had only asked for an accounting and waived other damage claims.[3] In response to this Court's direct question, "Did you ask for a monetary award or only for an accounting," Plaintiff's counsel responded that, "All we asked for was that a bean count, a bean count, add up the number of dollars paid to the defendants, divide by two, ... and that's what we want. So I think it can be fairly said that we abandoned our damage claim at trial."[4]

This Court further questioned Plaintiff's counsel and asked, "Am I correct in understanding that what you asked for from the Court, before the Judge and before the jury, was that and is that

---

[3]Relevant portions of Plaintiff-Appellant's counsel's oral argument are as follows:

> At all times after trial the opening statement to the end of closing arguments, in chambers with Judge Sear in that passage that I'm being quoted on about the nightmare, we only sought, we only asked for an accounting of one-half the royalties. We threw away whatever fraud claims we might have had. We didn't try those damages claims whatsoever. All we said to the Court and to the jury was, here's a woman who wrote a great song, which has been denied for royalties....

[4]In the complaint we asked for damages and accounting. At the beginning of the trial, as I said to the end, all we asked for was that a bean count, a bean count, add up the number of dollars paid to the defendants, divide by two and that's want we want. The nightmare I related to was that before the trial I didn't have sufficient time to collect all the corroborating documents and third party users for our bean count but I think, for sure, we could get from the Lee's how much money they made, divide by two and of course, its crucial to Shirley Goodman that she have one-half ownership so she can claim one-half of the earnings prospective. So I think it can be fairly said that we abandoned our damage claim at trial.

your client be found to have a half ownership in the song and that an accounting be made of whatever the earnings might be that song ultimately made, and then by way of her having half ownership she would get half of the that?" In response Plaintiff's counsel states in part, "Exactly, but what it earned with respect to these defendants, just these defendants, obviously."

Whereon this Court replied, "So you didn't ask to give her X dollars or Y dollars, you asked to say, say that she owns half of it and then give me an accounting of whatever it made?" Plaintiff's counsel's response was "Yep." To which the Court responded, "That's all you want?" and plaintiff's counsel stated, "That's all we want. The judgment conceivably says nothing about damages, we waive any damages that we wanted."

The Court then further questioned plaintiff's counsel, "If you, let's assume that you got a ruling or a determination from the jury that she did own half interest in the song, and you got an accounting and they gave you the accounting and they said, well, okay, have a nice day; how did you plan to get that half?"

Plaintiff's counsel responded that, "The judgment said we were entitled to it." Whereon, the Court responded, "So, you were asking for damages?" and plaintiff's counsel stated, "No, the judgment says ... it simply states that plaintiff, Shirley Goodman, is entitled to one-half of the income from 1956 to date together with interest." Wherein the Court responded, "It did award an amount although it might not have been determined." Wherein Plaintiff's counsel responded, "Exactly, that's the point we're making."

Even though an argument can be made Plaintiff-Appellee waived damages in oral argument this waiver is ambiguous and equivocal at best. Plaintiff's counsel continues to seek money as damages, however, admits the particular amount of money has not been determined by the district court. Therefore, despite Plaintiff's counsel's assertion that Plaintiff's claim for damages was abandoned, this Court notes Plaintiff, nonetheless, consistently remains steadfast that money is owed as damages. Perhaps Plaintiff abandoned her right to determination of the exact amount of money owed at the time of trial; Plaintiff, nonetheless, consistently argues money is owed and should result as a consequence of this trial. Therefore, this Court finds Plaintiff-Appellee did not waive her right

to recover damages; therefore, a determination must now be made of the finality of the judgment rendered by the district court.

In preparation for trial, a jury instruction/interrogatory conference was held with the district court. In discussing the jury interrogatories, Plaintiff's counsel argued the rule of constructive trust, which would require[5] a recording author hold in trust the royalties for the other when there are two authors and one registers the copyright in his own name.

The district court raised whether the issue of damages was a question of law or one of fact to be determined by the jury and came to the conclusion that the decision was not a question for the jury, rather was one to be made by the Court, i.e., if Shirley Goodman were found by the jury to be a co-author, then the Court would take a gross amount and divide by two.[6] A discussion then ensured between Mr. Bennett, Plaintiff's counsel, and the district court about the impossibility of making a determination of the actual amount of royalties owed given the lack of documentation procured by Plaintiff-Appellee. Plaintiff's counsel stated: "It's going to be a nightmare,"[7] and opined

---

[5]Relevant portions of the transcript are as follows:

> Mr. Bennett: "In any event, all the cases, copyright cases say, well, there are two authors and one author registers in his own name, and this has happened before. The author who puts in the copyright registration holds the thing in trust for the other author. The other author doesn't have to do anything." Jury Interrogatory transcript p. 3.

[6]The District Court: "We considered that, and it seemed to me that if the jury findings were such that it found a co-authorship, that was a matter of law and not one of fact for a determination of the jury."

> The District Court: "[A]nd it seemed to us that like some other legal issues, that it was impossible to charge. It really wasn't a finding of fact but really was a legal concept that needed to be applied. For example, there is another one, if she is a co-author and you have approved a gross amount, then I wouldn't expect to charge the jury that you have to take all of these amounts and add them up and divide them by two, that I would divide by two if there was a gross award and say so much is Mrs. Goodman's." Jury Interrogatory transcript p. 4.

[7]Mr. Bennett: No. That's a good idea. We thought that a slight variation of that would be she is entitled to half of the earnings or half of whatever, however you want to put it.

> The Court: Well, then, you may make them figure out what the earnings are. Do you think they're going to be able to do that?

> Mr. Bennett: That would be absolutely impossible.

that if Mrs. Goodman were found to be a co-author then, "We could have a Magistrate or a Special Master stack up all the papers that we could dig up and that would be the end of that."[8]

This Court notes the district court first envisioned the existence of a simple way to determine the exact amount which would equal one-half of the royalties for "Let the Good Times Roll" from 1956 forward. However, further discussion revealed that Plaintiff had been unable to secure the needed documentation or the identity of those from whom the documentation would come and, therefore, a separate fact finding determination would need to be made in order to identify the specific amount to be divided by the Court.

After discussion, jury interrogatories were given to the jury which did not ask the jury to determine the amount of income owed or damages sustained. The jury rendered a verdict in favor of Ms. Goodman.

Judgment was issued on February 29, 1988 which found Shirley Goodman entitled to be listed as a co-author of "Let the Good Times Roll" and entitled to receive any future royalties from that song along with one-half of the prior royalties from the song from 1956 to date with interest.[9] The

---

The Court: That's why.

Mr. Bennett: Someone else is going to have to do that because we were never even given all of the records. Well—

Mrs. Clement: You didn't try to get them until the end of—

Mr. Alvey: Our defendant doesn't have them. That's for sure. We don't have all of the royalty statements.

Mr. Bennett: Some of these statements are in the hand[s] of third parties and warehouses. It's going to be a nightmare.

Jury Interrogatory transcript pages 4-5.

[8]"Mr. Bennett: We thought if there was a finding that she was co-author entitled to half, we could have a magistrate or a master stack up all of the papers that we could dig up and that would be the end of that."

Jury Interrogatory transcript pages 6 and 7.

[9]Relevant portions of the judgment of the district court read as follows:

That plaintiff, Shirley Goodman, is a joint owner of the copyright of the song entitled "Let the Good Times Roll"; and that plaintiff, Shirley Goodman, is

question now before this Court is whether this judgment is a final one from which appeal can be made or if the judgment is not final and, therefore, appeal is premature.

Plaintiff cites a number of cases wherein a judgment without specific determination is final, which are discussed below. However, in these cases the final accounting has been characterized as purely "ministerial" and/or "mechanical," citing *Winston Network v. Indiana Harbor Belt. R. Co.,* 944 F.2d 1351 (7th Cir.1991), citing *Parks v. Pavkovic,* 753 F.2d 1397, 1401 (7th Cir.1985), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653, *and cert. denied,* 474 U.S. 918, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985), and *McMunn v. Hertz Equipment Rental Corp.,* 791 F.2d 88, 90-91 (7th Cir.1986).

Plaintiff also argues the United States Supreme Court opinion of *Radio Station WOW v. Johnson,* 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945), which held a state court's judgment to be a final judgment when no amount was determined as damages. The Court held the accounting to be merely ancillary to the rescission of a lease, i.e., to the return of the *physical property. Johnson,* 326 U.S. at 126, 65 S.Ct. at 1479. Said rescission was the essence of the decree. The determination of the specific amount was merely perfunctory and readily ascertainable.

The *Johnson* case relies on a line of cases beginning with *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848) which, "Rely on the fact that there has been a *conclusive adjudication* of the rights and liabilities of the parties with *immediate delivery* of possession of the *subject matter of the suit.*" *Johnson,* 326 U.S. at 125, 65 S.Ct. at 1478 (emphasis added). This is not the case before this Court; the Plaintiff has admitted she had been unable to identify exactly who all paying parties

entitled to one-half of the income from said song from 1956 to date, together with pre-judgment interest thereon, and all costs.

It is further ordered that the Registrar of Copyrights shall rectify the records of the Copyright Office to indicate that plaintiff, Shirley Goodman, is a co-author and joint owner of the copyright registration and renewal thereof for the song entitled "Let the Good Times Roll," and that the copyright records be corrected (1) to show Leonard Lee and Shirley Goodman as co-authors under Registration No. EU444079 to the first term of the copyright; and (2) to show Shirley Goodman as one-half owner of the renewal estate of the copyright to "Let the Good Times Roll" by issuance of a Certificate of Renewal under regulations of the Copyright Office.

were and/or the amounts involved. To do so would by plaintiff's own words be "a nightmare." Plaintiff has made not only co-authorship but also one-half of all royalties paid over an almost thirty (30) year period subject matter of this suit.

Courts of appeal have jurisdiction over final decisions of the district court. 28 U.S.C. § 1291 (West Supp.1989). *Vaughn v. Mobil Oil Exploration & Producing Southeast,* 891 F.2d 1195 (5th Cir.1990). This Court has embraced "the well-settled general rule that a judgment or order is not final unless it ends the litigation on the merits and leaves nothing for the trier to do but execute the judgment." *Armstrong v. Trico Marine, Inc.,* 923 F.2d 55, 58 (5th Cir.1991), *citing Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 400 (5th Cir.) (*en banc* ), *cert. denied,* 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984).

This Court has further stated in *Vaughn,* "The finality requirement straddles two policies central to the integrity of our court system: (i) the avoidance of piecemeal review, *Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945), and (ii) the maintenance of the appellant courts as courts of review rather than of meddling and intervention, *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." *Vaughn,* 891 F.2d at 1197. As we noted in *Vaughn,* "No exact formulation of "finality' exists. The courts have, however, used various yardsticks to determine the finality of a judgment." *Id.*

Appeal would be allowed if "The determination of damages can be characterized as "ministerial.' " *Parks,* 753 F.2d at 1401. In *Parks,* the computation of damages required nothing more than adding a predetermined portion of a state court judgment along with statutory interest to defense costs in the state court litigation. Such a determination was viewed as "mechanical" as envisioned by *McMunn,* 791 F.2d at 90-91.

Clearly, more is required in this case than the mere delivery of property and/or a mechanical determination. As in *Johnson, supra,* the Plaintiff-Appellee has been declared by the judgment to be a co-owner, and delivery of ownership rights has been directed by the district court. However, the judgment of the district court does not grant delivery of physical property rather grants recognition of ownership and the rights which flow therefrom. Plaintiff's counsel himself admits the determination

of the amounts owed will be "a nightmare."  The award sought by Plaintiff-Appellee is not one which can be made by a mechanical determination.  The parties have not agreed upon or approved a gross amount as envisioned by the district court.  Rather after several years of litigation Plaintiff's counsel still could not present the corroborating documents, identify the third party users who paid royalty, or obtain from the Lees how much had been paid Leonard Lee in royalty on this one song before his death and how much had been paid them in royalty for this song since his death.  The award contemplates identifying royalties paid on one particular song to a songwriter now dead and thereafter to his heirs over an almost thirty (30) year period.  If the Lees had this information readily available or even easily identifiable, this Court cannot understand why Plaintiffs counsel felt to ascertain the amount would be a "nightmare." *See supra* note 7.  Clearly, the amount to be divided is not known, was not identified in the extensive district court experience and must be reconstructed requiring factual determinations by the district court.

The accounting goes far beyond the "ministerial or mechanical" as envisioned by the exception to a final judgment as stated in *Parks,* 753 F.2d at 1401.  Plaintiff's counsel himself states:  "It is a nightmare" and speaks with the Court about the use of a Magistrate or Special Master to determine the exact amount owed.

Considering the foregoing, this Court concludes that Plaintiff has not waived her claim for damages and in fact, still seeks money damages that have yet to be determined by the district court.  Further, the task of accounting for one-half of the royalties paid for the song "Let the Good Times Roll" from 1956 to present cannot be classified as merely "ministerial" or "mechanical";  therefore, the judgment is not final.

Accordingly, this Court finds that it is without jurisdiction in this matter and therefore, DISMISSES the appeal.

DISMISSED.