IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-20796

---

LYNWOOD MOREAU; KENNETH O. ADAMS; DAVID W. ADDISON, JOSE A. ALVARADO; ROBERT AMBOREE; BOBBY G. ANDREWS; RANDY ANDERWALD; GARY R. ASHFORD, CRAIG L. BAILEY; RICHARD BAILEY; RICHARDO E. BALDERAZ; HERBERT V. BARNARD; GERALD BARNETT; PAULETTE M. BARNETT; BRAD T. BENNETT; BRIDGETT BLACKMON; FLYNT E. BLACKWELL; GARY F. BLAHUTA; SCOTT P. BLANKENBURG; DEBORAH BLIESE; BRUCE H. BRECKENRIDGE; J.W. BROOKS; BRIAN BUCHANAN; PATRICIA M. BUI; DON E. BYNUM; CLARENCE A. CALLIS; WILLIAM M. CAMPBELL; HEATHER CARR; THOMAS J. CARR; PAUL E. CARPENTER; ROBERT CASEY; MARK E. CEPIEL; ELADIO C. CHAVEZ; EDWARD A. CHRISTENSEN; ROY CLARK; DENNY D. COKER; ALFORD A. COOK; GREGORY P. COX; DONALD D. CRAYTON; RICHARD D. CROOK; DAVID A. DAVIS; GARY W. DAVIS; CHRISTOPHER E. DEMPSEY; RUSSELL DUKES; LARRY A. EIKHOFF; FRANK FAIRLEY; DAVID W. FINELY; JAMES P. FITZGERALD; ERINE R. FOWLER; MICHAEL A. GARCIA; THOMAS M. GENTRY; JOHN GODEJOHANN; ROBERT M. GOERLITZ; DAVID GONZALES; RAUL V. GONZALES; MIGUEL A. GONZALEZ; BILLY GRAY; WILLIAM L. GRAY; LAWRENCE P. GRIES; THOMAS P. GURNEY; PRESTON R. HALFIN; SAMMY HEAD; NEIL HINES; LARRY D. HOWELL; MARSHALL P. ISOM; JAMES A. JOHNSON; DERRY L. JONES; DAVID E. KAUP; WILLIAM C. KENISELL; HOWARD J. KIMBLE; STEVE KIRK; EDGAR D. KNIGHTEN; FREDDY G. LAFUENTE; MICHAEL G. LAGRONE; AL LANFORD; VERNON S. LEMONS; SHEMEI B. LEVI; JEANNE LONG; TIMOTHY LOYD; JOE S. MAGALLON; DAVID B. MARTIN; PEDRO MARTINEZ; RUSSELL L. MAYFIELD; TERRY MCGREGOR; ROBERT C. MEAUX; STEPHEN MELINDER; MARTY M. MINGO; D.D. MONTGOMERY; JOSE L. MORIN; RICHARD O. NEWBY; ARTHUR W. NOLLEY; WILLIAM R. NORWOOD; RICHARD C. NUNNERY; KAREN D. O'BANNION; RAYMOND E. O'BANNION; GUADALUPE PALAFOX; WAYNE PARINELLO; DEBORAH PETRUSKA; JAMES A. PHILLIPS; SIMON C. RAMIREZ; MICHAEL B. RANKIN; JAMES C. REYNOLDS; WILLARD G. ROGERS; GERALD M. ROBINSON; JOE RUFFINO; LANCE J. SCOTT; ROB R. SELF; DONALD SHAVER; JAMES K. SHIPLEY; JAMES SMEDICK; GINA K. SPRIGGS; (GRAHMANN); JEFFREY M. STAUBER; LARRY L. STRICKLAND; BILLY J. TAYLOR; KERRY TOWNSEND; RICHARD S. TRENSKI; GORDON TROTT; ED TROTTI; RICHARD D. VALDEZ; DALTON E. VAN SLYKE; FRANK L. VERNAGALLO; RUBEN VILLARREAL; JOHNNY F. WALLING; GERALD R. WARREN; JAMES M. WATSON; THOMAS G. WELCH; JOHN H. WHEELER; JOSEPH L. WILLIAMS; RWANDA WILTZ,

Plaintiffs-Appellees,

versus


HARRIS COUNTY; TOMMY B. THOMAS; JOHNNY KLEVENAGEN, Sheriff

Defendants,

HARRIS COUNTY; TOMMY B. THOMAS,

Defendants-Appellants

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

October 19, 1998

Before HIGGINBOTHAM, PARKER and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Harris County appeals a grant of summary judgment in favor of a certified class of employees, finding that the County's policy requiring the use of accrued compensatory time by its employees contravened 29 U.S.C. § 207(o)(5) of the Fair Labor Standards Act (FLSA). We are persuaded that the 1985 Amendments to the FLSA do not grant public employees a right to choose when they will use accrued comp time. We reverse.


I.

The members of the class are employees of the Sheriff's Department of Harris County. The class asserted claims for

2

wrongful refusal of compensatory time off, retaliation and involuntary use of compensatory time.

The parties have stipulated to the essential facts. By County policy the accrued comp time for non-exempt employees must be kept below a predetermined level, set by each bureau commander. This level is based on the personnel requirements of each bureau.

An employee reaching the maximum allowable hours of comp time authorized by the FLSA is requested to take steps to reduce the number of accrued hours. A supervisor is authorized to order the employee to reduce accumulated comp time at a time suitable to the bureau. An employee dissatisfied with his supervisor's order may informally complain to higher levels of supervisory authority within the department.

Based upon the stipulation of facts, the district court ordered the parties to move for summary judgment and to address whether the County policy requiring the involuntary use of comp time by its employees contravened 29 U.S.C. § 207(o)(5) of the FLSA.

On November 26, 1996, the district court issued an "Opinion on Summary Judgment" and an Interlocutory Declaratory Judgment that "Harris County may not force employees to use their accumulated comp time without violating the FLSA" and asked for briefing from both parties on attorneys' fees. Then, on July 28, 1997, the district court issued an order entitled "Final Judgment" which stated the following:

3

Final Judgment

> 1.   Harris County may not force employees to use their accumulated compensatory time without violating the Fair Labor Standards Act.
>
> 2.   The parties plaintiff are awarded attorneys' fees of $21,360 from Harris County.

Plaintiffs did not ask the district court to rule on their claims for wrongful refusal of the use of comp time and for retaliation and it did not do so.  This appeal followed.

II.

A.

First, there is our jurisdiction.  The record on appeal indicates that the claims for wrongful refusal of the use of comp time and for retaliation have not been ruled on by the district court.  Responding to our question, Harris County agreed with the class that we have jurisdiction since the district court intended its order to be a final judgment.[1]

We have jurisdiction only over final decisions of the district court, with limited exceptions that are not relevant here.  28 U.S.C. § 1291 (West 1993).  A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978).  We have advocated a practical approach in deciding

---

[1]   Plaintiffs did not address the jurisdictional issue in their briefs.  However, at oral argument plaintiffs' counsel acknowledged that this court had jurisdiction over this appeal.

4

issues of finality. A judgment reflecting an intent to dispose of all issues before the district court is final. Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc., 891 F.2d 1195, 1197 (5th Cir. 1990); Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 705 (5th Cir. 1994). If a party abandons one of its claims, a judgment that disposes of all remaining theories is final and appealable so long as it is apparent that the district judge intended the judgment to dispose of all claims. Chiari v. City of League City, 920 F.2d 311, 314 (5th Cir. 1991). When the district court hands down a judgment couched in language calculated to conclude all claims before it, that judgment is final. Armstrong v. Trico Marine, Inc., 923 F.2d 55, 58 (5th Cir. 1991).

Here, the district court in entering final judgment appeared to decide all claims, although it did not explicitly address plaintiffs' wrongful refusal and retaliation claims. Nevertheless, plaintiffs did not pursue any error by the district court and acknowledged at oral argument that we have this jurisdiction over this appeal. We conclude that the district court decided all claims before it that were not abandoned. The order is a final judgment for purposes of this appeal.

B.

This dispute centers around Harris County's policy of not permitting accrued comp time for non-exempt employees to rise above

a predetermined level by directing employees to reduce the number of hours of accrued comp time. The district court held that accumulated comp time and salary must be treated the same way and that employees have a right to use comp time when they choose. Granting summary judgment for the class, the district concluded that Harris County's policy of controlling the amount of accrued comp time violated the FLSA. More precisely put, we must decide whether Harris County violates 29 U.S.C. § 207(o)(5) of the FLSA when it involuntarily shortens an employee's workweek with pay.

The relevant FLSA statute states:

(5) An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency –
(A) who has accrued compensatory time off authorized to be provided under paragraph (1), and
(B) who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

29 U.S.C. § 207(o)(5) (West Supp. 1998).

Harris County contends that the 1985 Amendments to the Fair Labor Act of 1938, reflected above, were enacted to alleviate the economic burden upon state and local governments imposed by the Act's cash overtime requirements, see Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985) (holding, in a 5-4 decision, that the FLSA could constitutionally apply to states and their political subdivisions), as were the implementing Department of Labor regulations. The County urges that Congress

6

must have intended for public employers to control the accrual of comp time because Congress contemplated a circumstance in which a public employer may elect to reduce or eliminate accrued comp time by making a cash payment. They point to 29 U.S.C. §207(o)(3)(B) which states that "if compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the regular rate earned by the employee at the time the employee receives such payment." Since this statute permits a public employer to reduce accrued comp time with cash payments, Harris County asserts that reductions in comp time must be at the employer's option.

The class contends that Congress vested the employee, rather than the employer, with the right to determine the use of accrued comp time off. They urge that 29 U.S.C. § 207(o)(5) imposes only one limitation on this right —— that the use of the comp time not unduly disrupt the operations of the public agency. The plaintiffs maintain since no other limitation on this right was imposed by Congress, they could choose to use or to bank their comp time as they see fit. In their view, employers do not have the right to control employees' use of their accrued comp time, so long as their use does not unduly disrupt their operations.

The economic incentives at stake are clear. In an era of tight public budgets, state employers like Harris County wish to control the accrual of comp time in order to avoid paying cash overtime wages when the amount of accrued comp time for any

7

employee reaches the statutory maximum of 240 or 480 hours. The state employees, on the other hand, want to accumulate accrued comp time up to the statutory maximum in order to receive cash payments at an overtime rate of time and one-half or at least retain the ability to "bank" comp time for later use at their behest.

Section 207(o)(5) does not address the Harris County policy. This statute is triggered only when the employee first requests the use of her accrued compensatory time and does not address whether a public employer may control an employee's accrual of comp time. See Heaton v. Moore, 43 F.3d 1176, 1181 (8th Cir. 1994). On its face then the statute is inapplicable to the present dispute. The class counters that the statute evidences Congress' belief that the use of accrued comp time must reside only with the employee and not the employer. The statute recognizing public employers' ability to pay down accrued comp time, 29 U.S.C. § 207(o)(3)(B), equally reflects Congressional intent to permit public employers to control the accrual of comp time.[2] Congress wanted to balance competing interests and intended for both public employers or employees to retain some control over accrued comp time.

Congress amended the FLSA in 1985 to ease the cost to state and local governments of complying with the FLSA,

---

[2]  Along the same lines, 29 C.F.R. § 553.27(a) states that "[p]ayments for accrued compensatory time earned after April 14, 1986, may be made at any time and shall be paid at the regular rate earned by the employee at the time the employee receives such payment."

8

particularly its overtime payment provisions.  During the debates, Congress considered proposals for an amendment exempting governmental agencies from the FLSA.  Rather than completely excluding agencies from the reach of the FLSA, Congress balanced the burden of complying with the FLSA's overtime provisions with protection for the worker.  See Todd D. Steenson, Note, The Public Sector Compensatory Time Exception to the Fair Labor Standards Act: Trying to Compensate for Congress' Lack of Clarity, 75 Minn. L. Rev. 1807, 1812, 1828 (1991).  The 1985 Amendments accomplished this dual purpose by allowing public employers to agree with employees to award comp time in lieu of monetary payments at a rate not lower than one and one-half hour for every overtime hour an employee works.  Id. at 1812.  Under this scheme, employees working overtime would receive additional time off from the job with pay but not cash at the higher overtime rates.  In sum, Congress did not consider or resolve the question that we face here.  Because the legislation reflected a compromise, it is impossible to determine how Congress would have legislated had it confronted the question. Before devising our own solution, we must of course look to precedent.

### C.

Relying on the Eighth Circuit's opinion in Heaton, the class urges that since "banked compensatory time is the property of the employee," they have the right to "bank" comp time in "what amounts to an employee-owned savings account of compensatory time."  See

<u>Heaton</u>, 43 F.3d at 1180. We have recently held that the 1985 Amendments to the FLSA, and section 207(o) in particular, do not reflect Congressional intent to create a property right in accrued comp time for employees. See <u>Alford v. Louisiana</u>, __ F.3d __, draft op. at p. 12 (5th Cir. 1998). <u>Alford</u>, however, sought to distinguish <u>Heaton</u>. In <u>Alford</u>, the employees merely sought to require employees to use comp time before dipping into annual leave, while in <u>Heaton</u>, the employer sought to require use of comp time before the use of annual leave. This case squarely presents the <u>Heaton</u> issue, and we must thus decide whether to extend <u>Alford</u> or to follow <u>Heaton</u>.

We choose to extend <u>Alford</u>. The reasoning in <u>Heaton</u> is flawed. The <u>Heaton</u> court rested on the principle of construction that "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." <u>Id.</u> at 1180 (internal quotation marks omitted). Because employees may choose to use their compensatory time within certain limits, the argument continues, employers cannot make the employees use the compensatory time sooner than the employees prefer.

This seems to be a misapplication of the relevant rule of construction. The question here is whether the statute "limits" the the "thing to be done," and thus application of the rule begs the question. Compare, for example, the Supreme Court case <u>Heaton</u> cites as originally invoking this rule of construction, <u>Raleigh & Gaston Ry. v. Reid</u>, 80 U.S. (13 Wall.) 269, 270 (1871). In that

10

case, a railroad company's charter provided that it should not be taxed for 15 years, and the Court held that by implication it could be taxed thereafter. That seems straightforward enough, but the same principle cannot mean that because an employee with comp time available can choose to use this comp time, an employer can never require an employee to reduce accumulated comp time. One simply does not relate to the other.

It is perhaps understandable that <u>Heaton</u>'s reasoning should be strained, because this is a situation in which Congress has not spoken clearly in the text of the statute itself or in the legislative history. Of course, we could still follow <u>Heaton</u> on prudential grounds, or simply to avoid an intercircuit conflict. This, however, would be a mistake, for it would leave the jurisprudence in this circuit unnecessarily confused. There seems no reason to allow our rule to turn on the issue of whether an employer conditions its requirement that an employee use comp time on the employee's attempt to take annual leave. We are bound by <u>Alford</u>, and if we were to follow <u>Heaton</u>, employers and employees through the Circuit would need to brace themselves for expensive litigation over what conditions an employer could place on an employee's annual leave.

The lack of uniformity occasioned by our decision to deviate from the Eighth Circuit is not a substantial concern in this context. Even in the absence of further congressional or regulatory action, neither <u>Heaton</u>, nor <u>Alford</u>, nor our extension of

11

it today represents the final word in any workplace. In the absence of a mandatory rule governing the situation, the parties remain free to reach a contractual solution to the problem. Provisions of an agreement between a covered employer and employees with regard to compensatory time are valid so long as they do not contradict the FLSA itself. See 29 C.F.R. § 553.23(a)(1). In this case, however, the parties have not identified any controlling provisions, and our obligation is to fashion a background rule, which the parties remain free to displace in future negotiations.

While Alford did not make explicit that its rule is only a default, it is worth noting that the default it selected was almost certainly the correct one. In fashioning a default rule, we are mindful of the academic consensus that the court's task is not simply to construct the rule that the parties would have bargained for if they had been fully informed and bargaining had been costless. See generally Symposium on Default Rules and Contractual Consent, 3 S. Cal. Interdisciplinary L.J. 1 (1993). Moreover, we recognize that a default rule should not always be tailored to achieve the most efficient or most just result for the parties to the lawsuit. In many situations, an "untailored default," a "single, off-the-rack standard" that provides a satisfactory contractual solution in the run of cases may be preferable. Ian Ayres & Robert Gertner, Filling Gaps in Incomplete Contracts: An Economic Theory of Default Rules, 99 Yale L.J. 87, 91 (1989).

12

This is such a case. A holding that employees by default may bank their comp time would be as clear as the holding that we reach today. But a default rule should be selected at a higher level of abstraction, to ensure clear answers in other FLSA scenarios where neither Congress nor the parties in an agreement have resolved a particular issue. See, e.g., Ayres & Gertner, supra, at 96 (noting the importance of minimizing future litigation costs in establishing a default rule). In general, allowing an employer to establish uniform employment policies with respect to questions not previously negotiated seems preferable to allowing each employee to establish his or her own policy, and it is certainly preferable to a regime in which the courts determine which default rule is best to apply one policy at a time.

Our holding here and in Alford is thus merely an application of the general principle that the employer can set workplace rules in the absence of a negotiated agreement to the contrary.[3] While this default may not achieve the optimal solution in every case, it promotes justice writ large. In establishing this approach, we

---

[3]There may be situations in which an employer is required to negotiate before establishing a workplace rule. See, e.g., National Labor Relations Bd. v. Katz, 369 U.S. 736, 747 (1962). The employees here, however, have not alleged a violation of the National Labor Relations Act. This opinion's analysis is consistent with any limitations on unilateral action that may exist. While an employer in certain circumstances may not be able to set forth a uniform policy, the rule that employers may require employees to use comp time applies even if that rule has not been duly enacted as a workplace policy, in the absence of an agreement to the contrary.

13

expect to  promote the interests of employers and employees alike by minimizing the need for future litigation concerning policies not addressed by Congress or employer-employee agreements.  And, of course, this general interpretive approach is itself a default, and the parties may select a different rule governing the construal of their agreements if they choose.

## III.

We REVERSE the district court's grant of summary judgment in favor of the class and enter judgment for Harris County and all other defendants.

REVERSED.

14

DENNIS, Circuit Judge, Concurring in part and dissenting in part.


In my opinion neither the plaintiffs nor the defendants have demonstrated that they are entitled to judgment as a matter of law on the present record. Accordingly, I agree that the district court's judgment must be reversed. I disagree, however, with the majority's decision to grant summary judgment for the county at the appellate level. The majority incorrectly applies its own common law type "default rule" rather than following the Secretary's authoritative interpretation of the FLSA. Consequently, the majority erroneously fails to remand the case to the district court for trial or other proceedings as is required by the correct legal principles.

The FLSA does not directly address the precise question at issue in this case, viz., whether a public agency may, absent an employee's request or agreement, unilaterally compel the employee to use accrued compensatory time off rather than receiving cash compensation for the accrued compensatory time off in accordance with § 207(o)(3)(B). Because the statute is silent or ambiguous with respect to the specific issue, the questions for this court are whether the administrative agency has addressed the issue, and, if so, whether the agency's answer is based on a permissible construction of the statute. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984); see also Auer v. Robbins, 117 S.Ct. 905, 909 (1997)(quoting Chevron,

15

467 U.S. at 842-843).  A  court  does not simply impose its own construction on the statute when an administrative interpretation based on a permissible construction of the statute exists. Chevron, U.S.A., Inc., 467 U.S. at 843;  Fort Hood Barbers Assn. v. Herman, 137 F.3d 302, 307 (5th Cir. 1998)(Summary Calendar).

The deference owed by this court to administrative regulations issued to interpret and implement a federal statute depends on whether the regulation is "legislative" or "interpretative."  Fort Hood Barbers Assn., 137 F.3d at 307; Snap-Drape, Inc. v. Comm'r, 98 F.3d 194, 197 (5th Cir. 1996); Dresser Industries, Inc. v. Comm'r, 911 F.2d 1128 (5th Cir. 1990)(internal citations omitted).  If legislative, that is "issued under a specific grant of authority to prescribe a method of executing a statutory provision," the regulation is controlling unless it is "arbitrary, capricious, or manifestly contrary to the statute." Snap-Drape, Inc., 98 F.3d at 197-98 (internal citations omitted); see also Chevron, U.S.A., Inc., 467 U.S. at 843.  An "interpretative" regulation is one promulgated pursuant to a "general grant of authority to prescribe regulations."   Interpretative  regulations  are  accorded  less deference, but are valid if they are "reasonable and 'harmonize[] with the plain language of the statute, its origin, and purpose.'" Fort Hood Barbers Assn., 137 F.3d at 307 (quoting Snap-Drape, Inc., 98 F.3d at 197).

The FLSA is administered and enforced by the Secretary of Labor. 29 U.S.C. §205; Skidmore v. Swift & Co., 323 U.S. 134, 137

16

(1944); <u>Condo v. Sysco Corp.</u>, 1 F.3d 599, 604 (7th Cir. 1993); 1 ROTHSTEIN, ET AL., EMPLOYMENT LAW § 4.10 pp. 368-69 (1994). The 1984 amendments to the FLSA expressly authorize the Secretary to promulgate regulations as are necessary to implement the amendments. 99 Stat. 787, §6, 29 U.S.C. § 203 (note). Pursuant to this authorization, the Secretary has promulgated regulations interpreting and applying pertinent provisions of the FLSA regarding compensatory time off. <u>See</u> 29 C.F.R. §553.2(b), §§553.20-553.28. I believe the Secretary's regulations by clear implication address the issue in the present case.

The regulations reiterate that in compensating employees for overtime work, a public agency may not substitute compensatory time off for overtime cash pay unless there was an agreement or understanding to do so between the employer and the employee (or the employee's representative) prior to the performance of the work. §553.23(a)(1). With respect to employees not covered by a bargaining or representative's agreement, but hired before April 15, 1986, the regular practice in effect on that date constitutes an agreement which satisfies the statute. <u>Id</u>. Further, a notice to an unrepresented individual employee that compensatory time will be awarded in lieu of overtime pay can evidence an agreement as required by the FLSA. §553.23(c)(1). Although an agreement as required by the statute is presumed to exist if such notice is given with respect to any employee who does not communicate his

17

unwillingness to accept compensatory time rather than overtime pay to his employer, the employee's decision to accept compensatory time "must be made freely and without coercion or pressure." Id. Finally, the agreement may take the form of an express condition of employment, if the employee knowingly and voluntarily agrees to it as a condition of employment and is informed that the compensatory time received may be preserved, used, or cashed out consistent with the provisions of section 7(o) of the Act. Id.

The agreement may include provisions restricting compensatory time off to certain hours of work only. §553.23(a)(2). Provisions governing the preservation, use, or cashing out of compensatory time also may be included; however, to the extent that any provision of an agreement is in violation of section 7(o), it is superseded by the requirements of section 7(o). Id.

The employer may discharge its obligation to honor accrued compensatory time earned after April 14, 1986, at any time by paying for it the regular rate earned by the employee at the time the employee receives payment. §553.27(a). Upon termination of employment, the employer must pay the employee for unused compensatory time earned after April 14, 1986, at a rate of compensation not less than the average regular rate received by such employee during the last 3 years of the employee's employment, or the final regular rate received by such employee, whichever is higher. §553.27(b).

Compensatory time cannot be used to avoid statutory overtime compensation. §553.25(b). "An employee has the right to use the compensatory time earned and must not be coerced to accept more compensatory time than an employer can realistically and in good faith expect to be able to grant within a reasonable time of the employee's request for use of such time." Id.

If an employee has accrued compensatory time and requests use of this compensatory time, the employer must permit the use of such time off within a "reasonable period" after the employee's request as long as such use will not "unduly disrupt" the operations of the agency. §553.25(a). A "reasonable period" will be determined by considering the customary work practices within the agency based on the circumstances, including the normal schedule of work, anticipated peak workloads based on past experience, emergency requirements for staff and services, and the availability of qualified substitute staff. §553.25(c)(1). If applicable provisions are included within the agreement or understanding between the employer and employee, they will govern the meaning of "reasonable period." §553.25(c)(2). An "unduly disruptive" use of accrued compensatory time off is one which the agency reasonably and in good faith anticipates "would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public." §553.25(d).

The Secretary's approach rejects the wooden proposition that the FLSA grants control over the use of accrued compensatory time

19

either exclusively to the employee or to the employer independently for its own unilateral purposes. Rather, it requires an agreement and understanding between the employer and the employee prior to the performance of the work to initiate compensation with, and accrual of, compensatory time off. As part of this agreement, the Secretary's construction also permits the employer and the employee to include other provisions governing the preservation, use, or cashing out of compensatory time so long as they are consistent with section 7(o) of the FLSA. These regulations indicate that the Secretary did not interpret the FLSA to allow an employer to require an employee involuntarily to use accrued compensatory time off in the absence of a lawful agreement providing such authorization.

In deciding whether the Secretary's approach qualifies as a permissible construction of the FLSA, it is not necessary to decide whether the Secretary's regulations issued pursuant to authority granted by the 1985 amendments are legislative or interpretative. Even if the regulations are properly classified as interpretative, they clearly are reasonable and in harmony with the language of the statute, its origin, and purpose. In enacting the 1985 amendments to the FLSA, Congress clearly sought to balance the needs and interests of both public employees and employers subject to the FLSA. The Secretary's approach accomplishes this Congressional directive by requiring employers desiring authorization to order employees to use accrued compensatory time whenever the employer

20

deems such consumption appropriate to include applicable provisions, consistent with the statute, in their agreements made with the employee.

With respect to employee requests for use of accrued compensatory time, the regulations specifically authorize the employer and employee in their agreement or understanding to state terms and conditions governing the meaning of "reasonable period." In addition, the Secretary sets forth a non-exclusive list of underlying considerations for use in determining the "reasonable period" within which a compensatory time off request must be granted and whether doing so would be "unduly disruptive" in a particular case. These regulations lead naturally and logically to the inference that the factors for evaluating the reasonableness and legality of any consensual limitations upon the employee's right to use and preserve compensatory time earned should be similar to those suggested for determining or defining a "reasonable period" within which an employer must grant a compensatory time off request, a use of compensatory time off that is "unduly disruptive" to the employer's operations, and a "realistic" and "good faith" utilization of compensatory time off in lieu of overtime cash pay by an employer.

Applying the provisions of the statute and the regulations to the present case, it is apparent that neither the plaintiffs nor the defendants have demonstrated that they are entitled to judgment as a mater of law under the FLSA as interpreted by the Secretary.

Moreover, we should take notice that agreements between the County and each individual employee incorporating the County's regulations providing for compensatory time in lieu of monetary overtime compensation apparently exist. <u>See</u> <u>Moreau v. Klevenhagen</u>, 508 U.S. 22, 29 (1993). The record before us, however, is not sufficiently complete to afford an adequate basis for determining whether provisions governing the preservation, use, or cashing out of compensatory time are included within these agreements, by incorporation or otherwise; or if so, whether these other provisions are consistent with or in violation of section 7(o) of the Act. If no controlling agreement exists, the district court should consider retaining jurisdiction while permitting the parties to enter such agreements. A court of appeal may vacate, set aside, or reverse a district court's judgment and may remand the cause and require such further proceedings to be had as may be just under the circumstances. 28 U.S.C. § 2106. *See* <u>Youngstown Sheet and Tube Co. v. Lucey Products Co.</u>, 403 F.2d 135, 139-41 (5th Cir. 1968) (Remanded to allow submission of proof to insure that substantial justice be done). *See also* <u>Hormel v. Helvering</u>, 312 U.S. 552, 557, 61 S.Ct. 719, 721 (1941) ("Orderly rules of procedure do not require sacrifice of the rules of fundamental justice."). Accordingly, under these authorities and the summary judgment rules, I would vacate the district court's judgment and remand the case to it for further proceedings including a trial or the taking

of additional evidence necessary to an informed decision of these questions.

Harris County argues that the FLSA authorizes public agencies to unilaterally force employees to reduce periodically their accrued compensatory time by taking off regular work days to prevent employees from demanding monetary compensation for any overtime hours worked after the statutory maximums are reached or cashing in large amounts of compensatory time upon their retirement or termination. The FLSA does not expressly give public agencies this right. The County, however, contends that because it has the right under §207(o)(3)(B), at any time, to reduce or eliminate an employee's accrued compensatory time, by paying the employee for that time at the employee's current regular rate of pay, the statute clearly implies that it may also reduce it by requiring an employee to use accrued compensatory time involuntarily (i.e., by not working hours for which the employee is compensated at the employee's regular rate. §207(o)(7)). The majority embraces and rearticulates the County's argument as follows:

> The statute recognizing public employers' ability to pay down accrued comp time, 29 U.S.C. § 207(o)(3)(B), equally reflects Congressional intent to permit employers to control the accrual of comp time.

Maj.Op.p.8 (footnote omitted).

In addition to not being persuasive, this approach fails to give proper deference to the Secretary's interpretation of the statute. The provision relied upon, §207(o)(3)(B), provides: "If

23

compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the regular rate earned by the employee at the time the employee receives such payment." Although an agency can reduce an employee's accrued compensatory time by paying for that time in cash, it does not necessarily follow that an employer can unilaterally require an employee to reduce accrued compensatory time by taking time off at regular pay.

Recognizing the unique fiscal burden that compliance with the FLSA would present to public agencies, the 1985 amendments to the FLSA permit only public agencies to compensate employees for overtime with compensatory time instead of cash payments. Congress did not intend, however, to allow public agencies to indefinitely replace monetary overtime compensation with compensatory time, undoubtedly an inferior substitute for cash. The statute clearly requires that any employee who has accrued 480 or 240 hours, as the case may be according to the category of employment, of compensatory time be paid overtime compensation in cash for additional overtime hours of work. §207(o)(3)(A). If Congress had intended to allow employers to permanently avoid the obligation of providing monetary compensation for overtime hours, it would not have imposed these statutory maximums on the amount of compensatory time the employer may award. The provision allowing employers to reduce the amount of accrued compensatory hours by paying monetary compensation does not reflect an intent to allow employers to unilaterally force employees to consume accrued

24

compensatory time without any concession to the employees' desires; instead, it simply provides employers with the option to decrease compensatory time balances by paying cash--the usual and superior form of overtime compensation.

Moreover, the FLSA expressly provides that an employee of a public agency who has accrued compensatory time off and has requested the use of such compensatory time shall be permitted by the agency to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the agency. § 207(o)(5). Accordingly, even if an agency can on its own initiative redeem compensatory time commitments for cash (the preferred form of compensation) at the employee's current regular rate of pay, it simply does not follow that an agency can also unilaterally make the employee's compensatory time an even less desirable substitute for cash overtime pay by depriving the employee of the choice of when and how to use it, but instead dictating the manner of its usage without regard to the desires or convenience of the employee.

Construing the statute in accordance with the Secretary's regulations does not deprive employers of all control of employee compensatory time balances. Employers may enter into an agreement with employees (or their representatives) concerning the preservation, use, and cashing out of compensatory time provided that these such agreements are consistent with section 7(o) of the FLSA. In addition, the regulations specifically allow employers to

reduce these balances by paying cash for the accrued compensatory hours.  Finally, as the Eighth Circuit noted in <u>Heaton v. Moore</u>, 43 F.3d 1176, 1181 (8th Cir. 1994), employers can always schedule less overtime or hire additional workers to decrease the rate of accrual of compensatory time.