IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-20852

---

GEOSOUTHERN ENERGY CORP.,
    Plaintiff - Counter Defendant - Appellee - Cross-Appellant,

AMERICAN FLOURITE, INC.,
                Counter Defendant - Appellee - Cross-Appellant,

versus

CHESAPEAKE OPERATING, INC.,
      Defendant - Counter Claimant - Appellant - Cross-Appellee.

---

Appeals from the United States District Court
for the Southern District of Texas

---

February 1, 2001

Before HIGGINBOTHAM and DeMOSS, Circuit Judges, and FISH,[*] District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is an appeal from an order of the district court granting declaratory relief, but declining to determine and award damages in a contract dispute. Because the order is neither a final judgment nor an order certified for appeal under Rule 54(b), we dismiss the appeal for lack of jurisdiction.

I

---

[*] District Judge of the Northern District of Texas, sitting by designation.

In 1991, GeoSouthern Energy Corp.[1] and Chesapeake Operating, Inc. signed a Joint Development Agreement under which they would share the risks and rewards of developing various oil prospects. Under the terms of the JDA, either party could suggest a "horizontal prospect" for development. Should GeoSouthern select a property, Chesapeake would have the option to participate in developing it. The JDA stated, "GeoSouthern will advise Chesapeake in writing of such a proposal . . . . Chesapeake will notify GeoSouthern in writing whether Chesapeake will participate and the amount of such participation *not less than* fifteen (15) days after receipt of such notice."[2] Should Chesapeake opt to participate, GeoSouthern was required to assign to Chesapeake an interest in the prospect. If the prospect proved unprofitable for sixty consecutive days, GeoSouthern was entitled to a reassignment of all rights.[3]

Three disputes arose between GeoSouthern and Chesapeake concerning the development of properties under the JDA. First, regarding the Victoria OL No. 1 Well, Chesapeake gave notice of

---

[1] American Flourite, Inc. is an affiliate of GeoSouthern. It was joined in this case as a third-party defendant. All references to GeoSouthern in this opinion should be understood to refer to American Flourite, Inc., as well.

[2] Emphasis supplied.

[3] In 1993, GeoSouthern and Chesapeake signed another Joint Development Agreement materially modifying the terms of the 1991 JDA. While the terms of this agreement are relevant to the substantive issues in this case, we do not go into its details because we resolve this dispute on jurisdictional grounds.

intent to participate nineteen days after GeoSouthern proposed the prospect. GeoSouthern refused participation on the grounds that the notice was untimely. Chesapeake argues that the contract provides for a response in "not less than" fifteen days, and points out that nineteen days is not less than fifteen days. GeoSouthern replies that the "not less than" language constitutes a mutual mistake, and the intent of the parties was to provide for a response within fifteen days.

Second, regarding the Brangus No. 1-RE Unit, GeoSouthern and Chesapeake originally participated jointly in developing a well in the Brangus area. It was not profitable. Chesapeake reassigned all rights to GeoSouthern. GeoSouthern then combined the land for which rights had been reassigned with other land not subject to the JDA, to produce a commercially viable well. Chesapeake argues that it should be entitled to a pro rata interest in the new well, proportionate to the amount of land subject to the JDA that is used in the new well. GeoSouthern disagrees, arguing that the reassignment divested Chesapeake of all rights to the land used in the new well.

Third, a similar dispute arose regarding the Abbie 1-H and Neidra #1-H wells. Here, the JDA provides for 160-acre units, but the wells proposed by Chesapeake were 240 and 314.53 acres. Chesapeake agreed to give GeoSouthern the right to reassignment of the excess acreage. GeoSouthern exercised that right, and again combined the reassigned land with other land not subject to the JDA

3

to produce the Helene No. 1-RE Unit.  Chesapeake again argues for a pro rata share, and GeoSouthern again says that the reassignment divested Chesapeake of all rights.

GeoSouthern sued, seeking reformation of the JDA to change the "not less than" language to "not more than."  GeoSouthern also sought a declaration that Chesapeake was not entitled to any interest in the Victoria well.  Chesapeake counterclaimed, seeking a declaration that it did have an interest in the Victoria well, as well as the Helene and Brangus wells.  Chesapeake requested an accounting and recovery of proceeds from the disputed wells.

The case was scheduled for a bench trial.  Both parties filed cross-motions for summary judgment.  In an order captioned "Final Order," the district court granted Chesapeake's motion and denied GeoSouthern's.  The order did not determine the percentage interest to which Chesapeake was entitled; nor did it order an accounting and award damages.  Chesapeake filed a motion to amend, and the district court vacated the order and scheduled a hearing on relief.

After the hearing, the district court issued an "Amended Final Judgment," which specified the percentage interests to which Chesapeake was entitled and awarded attorney's fees.  The order stated that the court "declines to calculate and award monetary relief at this time."  The order concluded with "THIS IS A FINAL JUDGMENT."

Chesapeake appealed, and GeoSouthern cross-appealed.

II

4

The Courts of Appeals have jurisdiction only over appeals from "final decisions of the district courts."[4]  Decisions are final only when they "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment."[5] Ordinarily, computing and awarding damages is more than mere execution, and a judgment is not final without it.  At the same time, as we recently held in *Goodman v. Lee*,[6] a judgment failing to award damages may still be final if the computation of damages is "purely 'ministerial' and/or 'mechanical.'"[7]  In *Goodman*, the plaintiff won a declaration that she was a co-author of the song "Let the Good Times Roll," and was entitled to a share of royalties, but the judgment did not state the damages she was owed. We held that computing such damages was not "ministerial" or "mechanical," because the parties did not even know "who all paying parties were and/or the amounts involved."[8]  We contrasted that with a situation in which "the computation of damages required

---

[4] 28 U.S.C. § 1291 (2000).

[5] *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (citations and internal quotations omitted); *see also Moreau v. Harris County*, 158 F.3d 241, 244 (5th Cir. 1998).

[6] 988 F.2d 619 (5th Cir. 1993).

[7] *Id.* at 626 (quoting *Winston Network v. Indiana Harbor Belt R. Co.*, 944 F.2d 1351, 1357 (7th Cir. 1991)).

[8] *Id.* at 626.

5

nothing more than adding a predetermined portion of a state court judgment along with statutory interest to defense costs."[9]

This case sits somewhere between those two extremes. Unlike *Goodman*, there are no unidentified payors here, and it appears that an audit of GeoSouthern's books, not yet in the record, will provide the database for the calculation. The computation, however, is relatively complex, involving the tracking of production over time and computing the ongoing revenue stream of which Chesapeake was entitled to a share. This is more than summing two numbers readily locatable in the record, but less than finding unknown payors and learning the amounts they paid.

Although the district court declined to order an accounting because it saw no reason to believe that GeoSouthern would not be forthcoming with the relevant figures, the act of acquiring that information is more than ministerial. The computation, while theoretically determinate, is not simple. The task of dividing up an ongoing revenue stream, while perhaps not challenging for a professional accountant, goes beyond the routine ministerial duties of courts. Finally, on this record we cannot say that there will be no disputes over what oil and revenue is to be counted. We therefore conclude that the tasks of computing damages is more than "ministerial" or "mechanical," and thus this is not an appealable final judgment. That is, enough remains to be done of sufficient

---

[9] *Id.*

complexity that it risks two appeals when one should do.  And the level of risk of multiple piecemeal appeals informs the determination of what is "ministerial or mechanical."[10]  It is, in short, a pragmatic and predictive judgment.

DISMISSED for lack of jurisdiction.

---

[10] Nor is this order immediately appealable under Rule 54(b). The district court did not expressly certify this matter for appeal under Rule 54(b).  "THIS IS A FINAL JUDGMENT" is insufficient to meet Rule 54(b)'s requirements. *See Briargrove Shopping Center Joint Venture v. Pilgrim Enterprises*, 170 F.3d 536, 540 (5th Cir. 1999) (holding that labeling an order a "Final Judgment" is not sufficient to trigger Rule 54(b) because it does not indicate an intent that the order be immediately appealable).