# United States Court of Appeals
## For the First Circuit

No. 19-1364

WM CAPITAL PARTNERS 53, LLC,

Plaintiff, Appellee,

v.

BARRERAS, INC.,

Defendant, Appellant,

GABLES TOWERS, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lipez, Thompson, and Barron,
Circuit Judges.

Lizabel M. Negrón-Vargas, with whom Edgardo L. Rivera Rivera and The Rivera Group were on brief, for appellant.
Juan C. Salichs-Pou, with whom Salichs Pou & Associates, PSC and Ramón L. Ramos-Aponte were on brief, for appellee.

September 22, 2020

**LIPEZ**, **Circuit Judge**. Plaintiff-appellee WM Capital Partners 53, LLC ("WM Capital") filed this diversity action seeking a declaratory judgment specifying its property rights in a commercial complex in San Juan, Puerto Rico. The district court granted WM Capital's motion for summary judgment, denied a cross-motion for summary judgment filed by defendant-appellant Barreras, Inc., directed WM Capital to "submit a proposed declaration for the Court's consideration," and instructed the Clerk of Court to "enter judgment as to all defendants."[1] WM Capital Partners 53, LLC v. Barreras Inc., 373 F. Supp. 3d 350, 354 (D.P.R. 2019). Pursuant to that instruction, the Clerk of Court issued an order captioned "JUDGMENT"[2] the day after the Opinion issued -- and before WM Capital submitted its proposed declaration. The Judgment stated that, "pursuant to the Court's Opinion and Order, . . . [j]udgment is HEREBY ENTERED as to all defendants in favor of plaintiff." The same day, Barreras filed a notice of appeal. WM Capital subsequently submitted its proposed declaration, and Barreras filed objections to it. However, the district court

---

[1] The other defendant in this case, Gables Towers, Inc., never filed an answer to the complaint, see WM Capital, 373 F. Supp. 3d. at 354 n.1, and is not a party to this appeal.

[2] We refer to the district court's summary judgment opinion and order as the "Opinion" and the separate order, captioned "JUDGMENT," as the "Judgment" for clarity.

declined to take further action and stayed the proceedings pending the outcome of this appeal.

Because we conclude that the district court never issued a "final decision," see 28 U.S.C. § 1291, we dismiss Barreras's appeal for lack of appellate jurisdiction.

## I.

We briefly summarize the factual background and recite the procedural history relevant to our analysis. This appeal arises from a dispute over the parties' property interests in two office towers in San Juan, known as the Citi Towers Complex ("the Towers"), and the parcel of land on which they stand. There is no dispute that the parcel is owned by Barreras. In 1960, Barreras's predecessor leased out the parcel for a renewable period of up to 99 years to the First National City Bank of New York. The lease required the tenant to "promptly . . . demolish[], reconstruct[], remodel[], or rebuil[d], at the Tenant's cost" the existing structures on the land and spend at least one million dollars on the construction project. The lease further specified that the tenant would own the new building for the period of the lease, but that, when the lease was terminated, the landlord would "become the owner, without liability to the [t]enant, and without obligation to reimburse the [t]enant, of all improvements, buildings and structures[,] which the [t]enant[] may have made in the leased premises."

- 3 -

Consistent with the lease's requirement, the Towers were built on the leased land, as reflected in a recording in 1988 in the Puerto Rico Property Registry. In 2005, Gables Towers, Inc. ("Gables") purchased the Towers for $24 million, and Gables was also reassigned the lease for the parcel on which they stand.[3] To finance the purchase, Gables received in 2005 a loan from R-G Premier Bank of Puerto Rico for $21.6 million, secured by a mortgage on the Towers.[4] In 2006, Gables entered a second loan agreement with R-G Premier Bank for $25.6 million to refinance the first loan, to pay an existing line of credit, and to cover additional costs. Accordingly, Gables executed an additional mortgage note in the amount of $4 million and its 2005 mortgage was amended and extended to secure the additional debt.[5] Subsequently, Scotiabank replaced R-G Premier Bank as the creditor in the loan agreements with Gables.

In 2012, Scotiabank, WM Capital's predecessor, initiated a collection and foreclosure proceeding against Gables, asserting

---

[3] In assigning the lease to Gables, the prior lessee (and, thus, prior owner of the Towers) also "delivered possession" of two mortgage notes for $4.4 million that were executed in 1998 and that are secured by a mortgage on the leasehold.

[4] In addition to creating a mortgage on the Towers, Gables also "pledge[d], assign[ed,] and grant[ed] to the [lender] a security interest" in the two mortgage notes executed in 1998.

[5] As with the 2005 loan, Gables again pledged a security interest in the 1998 mortgage notes. In 2009, Gables executed a restructuring amendment to the 2006 mortgage.

that Gables had failed to comply with the terms of the loan agreement and demanding, among other relief, that the Towers be sold at public auction. Shortly thereafter, in 2013, Gables failed to pay more than $800,000 in property taxes, which was its responsibility under the terms of the lease, and Barreras initiated eviction proceedings in a Commonwealth court, the Court of First Instance, San Juan Part ("CFI"). The eviction proceedings transpired simultaneously with the foreclosure proceeding. Ultimately, Gables and Barreras submitted the eviction dispute to arbitration. Invoking Puerto Rico law, Scotiabank sought to intervene in the arbitration proceedings on the ground that, as Gables's mortgagee, it had a statutory right to be subrogated into the position of lessee. The arbitrator denied that request in October 2015 because the original lease agreement, which included the arbitration provision, was between only Gables and Barreras.[6] Scotiabank did not appeal the arbitrator's denial of its petition for intervention.

---

[6] Scotiabank also sought to intervene in the eviction proceedings in the CFI before Barreras and Gables submitted that dispute to arbitration. The CFI denied that request in February 2014, and the Puerto Rico Court of Appeals denied a request for reconsideration. However, both of these intervention rulings against Scotiabank were later vacated by that court when it concluded that the lease required the parties to arbitrate their dispute and that the arbitrator was entitled to decide the intervention issue.

In 2016, the arbitrator issued an arbitration award and order, concluding that Gables had breached the lease agreement with Barreras; that Barreras terminated the lease agreement on October 16, 2013; and that "Barreras has the right to receive full ownership" of the Towers, pursuant to the terms of the lease agreement. Accordingly, the arbitrator ordered Gables's eviction from the Towers and directed "[b]oth parties . . . to carry out the relevant procedures in the Registry of Property to transfer the ownership of the [Towers] in favor of Barreras."

WM Capital, having succeeded Scotiabank as the creditor while the arbitration proceedings were ongoing (and also having been denied the opportunity to participate), filed this action in January 2017 seeking a declaratory judgment, pursuant to the Declaratory Judgment Act ("the DJA" or "the Act"), 28 U.S.C. §§ 2201-2202, and Rule 57, see Fed. R. Civ. P. 57.[7] Specifically, WM Capital sought a declaration stating its rights as the holder of a mortgage on a leasehold interest under Puerto Rico law, see P.R. Laws Ann. tit. 30, § 6086(7) -- the same statutory right Scotiabank

---

[7] At the time WM Capital filed its request in the district court for a declaratory judgment, the arbitration award was under review in the CFI. In March 2017, Barreras moved to dismiss WM Capital's petition as premature because the arbitration proceedings between Barreras and Gables had not concluded. In December 2017, the CFI confirmed the arbitration award. In both the district court and in this appeal, WM Capital has asserted that it did not appeal the confirmed arbitration award because, as a non-party to the arbitration, it had no right to appeal and the award was not binding on it.

unsuccessfully asserted as a basis for intervening in the earlier CFI and arbitration proceedings. That statutory provision (the "subrogation clause") states that "[a] registered leasehold interest" is "mortgageable" so "long as the lessee is authorized to sell, assign, sublet or mortgage his/her right." Id. It further states that "the mortgage title holder may be subrogated to the place and grade [of the lessee] as a transferee, either by agreement between the interested parties or by decision of a court" if the lease is terminated "due to causes attributable to the will of the lessee." Id.

In its motion for summary judgment, WM Capital sought a declaration stating that it has been subrogated as the lessee in Gables's lease agreement with Barreras and is therefore "entitled to all the rights and interest in and to the Deed of Lease for the remainder of the term thereof." Among those rights, WM Capital contends, is ownership of the Towers for the remainder of the lease -- a result directly at odds with the arbitration award in the eviction dispute between Gables and Barreras, which awarded ownership of the Towers to Barreras. Barreras cross-moved for summary judgment. As noted above, the district court granted WM Capital's motion. WM Capital, 373 F. Supp. 3d at 354. In its Opinion, the district court concluded that the arbitration award did not "extinguish[]" WM Capital's mortgages on the leasehold and the Towers, despite a statement in the arbitration award indicating

that the parties should take the necessary steps "to convey to Barreras the title over the [Towers], free of liens and encumbrances."[8]  Id. at 363-64 (emphasis omitted).  The district court further concluded that, as the holder of a valid mortgage on the leasehold, WM Capital was entitled to be subrogated for Gables as the lessee.[9]  Id. at 365.

---

[8] The certified English translation of the award includes three versions of the order to the parties and, thus, directs Gables and Barreras to take certain steps to convey ownership of the Towers to Barreras in three separate places within the award. Only one of those statements, however, indicates that the Towers should be conveyed to Barreras "free of liens and encumbrances." The other two statements omit this consequential language. On the second page of the arbitration award (a document that was prepared by the arbitrator in Spanish), the arbitrator directed "[b]oth parties . . . to carry out the relevant procedures in the Registry of Property to transfer the ownership of the [Towers] in favor of Barreras." Additionally, in a page-long English translation of the award (without the accompanying findings of fact and conclusions of law) that the arbitrator prepared "for the benefit of the case manager in charge of this matter in the American Arbitration Association," nearly identical language is used. In its Opinion granting summary judgment in favor of WM Capital, the district court pointed to several aspects of the outlier page "suggesting that [it] was not intended to be included in the final version of the award." WM Capital, 373 F. Supp. 3d at 364. Accordingly, the district court concluded that it "would be remiss to accept Barreras's invitation to explicitly interpret this outlier page as fully and validly extinguishing the rights of a non-signatory non-party to the arbitration proceeding," meaning WM Capital. Id.

[9] The district court relied on the following facts to conclude that WM Capital was entitled to be subrogated:

> (1) the Deed of Lease was properly recorded;
> (2) it entitled the lessee to assign and sub-lease its right; (3) Gables was the most-recent lessee; (4) plaintiff, as holder of Gables'[s] mortgage[,] has a security on the recorded lease; and (5) the lease was

- 8 -

Accordingly, the district court directed WM Capital to submit a proposed declaration.  Id. at 367.  Then, the day after the Opinion was issued, the Clerk of Court entered the Judgment in favor of WM Capital without a statement of the parties' rights.  That same day, Barreras filed its notice of appeal without waiting for WM Capital to file its proposed declaration -- which WM Capital did approximately one month later.  The district court declined to take further action pending resolution of this appeal "[i]n order to promote efficiency in the proceedings and to preserve judicial economy."

## II.

We have jurisdiction only from appeals of "final decisions" of federal district courts.  See 28 U.S.C. § 1291.  Thus, when there is a question about the finality of the decision below, we must address the issue even if, as in this case, the parties do not raise it themselves.  See Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 740-42 (1976) (assessing

---

cancelled for causes controlled by the will of the lessee, namely, Gables's nonpayment of the property taxes.

WM Capital, 373 F. Supp. 3d at 365 (second alteration in original) (internal citation and quotation marks omitted).

- 9 -

sua sponte appealability of purported declaratory judgment at issue and ultimately vacating the judgment of the court of appeals with instructions to dismiss appeal for lack of jurisdiction); see also Ashcroft v. Iqbal, 556 U.S. 662, 671-72 (2009) (treating the question of whether the district court issued a "'final decision' within the meaning of § 1291" as one of "subject-matter jurisdiction"). This appeal suffers from a fatal defect related to these principles of finality.

If a district court chooses to exercise its power pursuant to the DJA,[10] a decision granting summary judgment for a party without an accompanying order declaring the specific rights of the parties will not constitute a "final decision" in declaratory judgment actions. See Am. Interinsurance Exch. v. Occidental Fire & Cas. Co., 835 F.2d 157, 158-59 (7th Cir. 1987) (dismissing appeal for lack of jurisdiction because district court had issued a decision granting summary judgment and an order on the form prescribed for judgments in civil cases but had not issued

---

[10] The text of the DJA states that,

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). Thus, as is evident from the text, courts may choose whether to exercise their jurisdiction in declaratory judgment actions.

a "declaratory judgment or other specification of the relief to which [the prevailing parties] were entitled by virtue of the grant of their motions"). As the Seventh Circuit has observed, "[t]he district judge must select the language of the declaratory judgment and issue the order," Foremost Sales Promotions, Inc. v. Director, ATF, 812 F.2d 1044, 1045 (7th Cir. 1987) (per curiam), and "[d]rafting the necessary declaratory judgment . . . require[s] some care," Am. Interinsurance Exch., 835 F.2d at 159.

Here, WM Capital sought declaratory relief, specifically requesting a judgment

> a) Declaring that upon the termination of the Ground Lease of August 29, 1960 by Barreras, as per the determinations made in the arbitration award issued on September 28, 2016 . . . , WM Capital[] has subrogated Gables[] as Barreras's tenant per the terms of the Ground Lease, in conformity with [the subrogation clause]. Therefore, WM Capital[] is entitled to all the rights and interest in and to the Ground Lease for the remainder of the term thereof, including 1) the right to sublease and/or reassign[] said deed of lease; 2) and ownership of [the Towers] and the right to sell said property, pursuant to the terms of Ground Lease.

> b) Declaring that said subrogation would be permanent until the expiration of the term of the Ground Lease, or provisional, if the arbitration award issued on September 28, 2016 is ever revoked in favor of Gables[], in which case, WM Capital[] or any successor would continue the pending foreclosure proceedings against Gable[s] before the Court of First Instance, San Juan Part.

c) Declaring that Barreras and Gables[] must refrain from any action to deprive WM Capital[] of its rights as recognized by [the subrogation clause].

d) Granting all other relief that is proper.

In the Opinion granting WM Capital's motion for summary judgment and denying Barreras's cross-motion, the district court concluded that the subrogation clause "permits [WM Capital], as mortgagee, to subrogate [its] place and stead as assignee . . . by decision of a competent court." WM Capital, 373 F. Supp. 3d at 365 (alteration and omission in original) (internal quotation marks omitted). However, neither the Opinion nor the Judgment addressed whether subrogation entitled WM Capital to the specific rights it sought in its complaint, reiterated in its motion for summary judgment, and set forth explicitly in its proposed declaratory judgment. Rather, the district court deferred delineating the rights that flowed from its grant of summary judgment to WM Capital, as evidenced by its instruction to WM Capital to "submit a proposed declaration for the Court's consideration." Id. at 354, 367. That is, the district court did not accompany its Opinion with the necessary order carefully specifying the parties' rights, and it never acted upon the proposed declaratory judgment that it directed WM Capital to file.

To be sure, some actions in the district court -- namely the district court's instruction to the "Clerk of Court [to] enter

judgment as to all defendants in favor of plaintiff" in the Opinion, id. at 354, and the Clerk's issuance of a separate order the next day titled "JUDGMENT" -- ordinarily would signify that a final judgment had been reached.  However, the court's instruction and nomenclature do not transform the Opinion and Judgment into a final, appealable decision.  See, e.g., GeoSouthern Energy Corp. v. Chesapeake Operating, Inc., 241 F.3d 388, 391-92 (5th Cir. 2001) (dismissing appeal for lack of appellate jurisdiction after determining that an order captioned "Amended Final Judgment" that concluded with "THIS IS A FINAL JUDGMENT" was not a final judgment).

The parties' appellate briefs and the flurry of motions filed in the district court after the notice of appeal demonstrate why the precise specification of the parties' rights is essential, both for appellate review and for the understanding of the parties about the status of their competing claims.  Here, for instance, Barreras argues that the district court erred by concluding that the arbitration award between Gables and Barreras, in which the arbitrator did not allow WM Capital to intervene, did not have a preclusive effect on this litigation.  It is difficult, however, to determine the relationship between the district court's grant of summary judgment and that arbitration award without a precise specification of the rights that flow from the district court's decision.

- 13 -

Moreover, it is apparent that the parties do not understand their rights in the Towers and the leasehold even after the district court's grant of summary judgment. After the issuance of the district court's Opinion, WM Capital filed a petition to the Commonwealth Registrar of Property seeking, among other things, that the Registrar record WM Capital as "vested with fee simple title over [the Towers]," which, in turn, prompted Barreras to file an "emergency motion for court order" in the district court asserting that there was no final decision establishing WM Capital was entitled to that remedy. WM Capital, for its part, sought an order from the district court directing Barreras to withdraw a writ of execution -- which directed the Registry to record Barreras as the owner of the leased land and the Towers "free of liens and encumbrances" -- from the Property Registry. The race of the parties to use their respective judgments (for WM Capital, the district court's grant of summary judgment; for Barreras, the CFI's affirmation of the arbitration award) at the Property Registry underscores why a precise delineation of the parties' rights is essential. If the district court had entered a declaratory judgment as it contemplated, WM Capital would not have to assert its own interpretation of the grant of summary judgment in the Registry of Property.

At bottom, it is apparent from the district court's own Opinion that its decision did not "end[] the litigation on the

merits and leave[] nothing for the court to do but execute the judgment," our general standard for assessing whether a decision is "final." Catlin v. United States, 324 U.S. 229, 233 (1945); see also Am. Interinsurance Exch., 835 F.2d at 158 (citing district court's instruction to the parties to file a proposed declaration as evidence that its grant of summary judgment and accompanying "judgment" without specification of the parties' rights were not final). The district court had not yet ruled on all the relief WM Capital sought -- and not because it declined to exercise its power pursuant to the DJA. Rather, the district court clearly demonstrated its intent to take further action by directing WM Capital to file a proposed declaration. Consistent with that intent, the parties continued to submit filings to the district court, and the court's decision to hold those motions in abeyance pending disposition of this appeal underscores that it did not view the Opinion and Judgment from which Barreras appeals as a final declaratory judgment.

We recognize that the district court may have thought Barreras's notice of appeal divested it of jurisdiction and thus precluded it from ruling on WM Capital's proposed declaration. See Donahue v. Fed. Nat'l Mortg. Ass'n, 971 F.3d 1, ___ (1st Cir. 2020) ("[G]enerally, '[t]he filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control

over those aspects of the case involved in the appeal.'" (second alteration in original) (emphasis omitted) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982))).  It is debatable whether Barreras's notice did, in fact, divest the court of jurisdiction, given that "no divestiture . . . occurs 'if the notice of appeal is defective in some substantial and easily discernible way (if, for example, it is based on an unappealable order).'"  Id. (quoting United States v. Brooks, 145 F.3d 446, 456 (1st Cir. 1998)).  However, we need not resolve that debate. The relevant inquiry here is whether there is a final decision, not whether the district court could have entered one despite the notice of appeal.  As we have explained, the district court never entered a final decision.  Without a final declaratory judgment, we lack appellate jurisdiction.  The appeal is therefore dismissed.

So ordered.