# United States Court of Appeals
## For the First Circuit

No. 22-1806

JENNIFER D. ALDEA-TIRADO,

Plaintiff, Appellant,

v.

PRICEWATERHOUSECOOPERS, LLP,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Montecalvo, Circuit Judges.

Maricarmen Almodóvar-Díaz, for appellant.
Jacob T. Spencer, with whom Jason C. Schwartz, Pedro J. Torres-Díaz, Ana B. Rosado-Frontanés, Jackson Lewis LLC, and Gibson, Dunn & Crutcher LLP were on brief, for appellee.

May 10, 2024

BARRON, **Chief Judge**.  In this appeal, Jennifer D. Aldea-Tirado ("Aldea-Tirado") challenges an order to compel the arbitration of her federal and Puerto Rico law claims against her employer, PricewaterhouseCoopers LLP ("PWC").  We affirm.

## I.

In November 2021, Aldea-Tirado filed suit against PWC in the United States District Court for the District of Puerto Rico.[1] Her complaint set forth claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000-e, the Pregnancy Discrimination Act of 1978 ("PDA"), Pub. L. No. 95-555, 92 Stat. 2076, and Puerto Rico law. The claims pertained to her employment at PWC, which began in 2013 when she started working as an associate accountant at the company's San Juan office.  The claims alleged, among other things, that she was subjected to an adverse employment action on account of her gender and pregnancy and that she was retaliated against for filing a complaint with the United States Equal Employment Opportunity Commission alleging that PWC had violated her rights under Title VII.

The parties agree that Aldea-Tirado's employment contract with PWC, when executed on October 9, 2013, did not

---

[1] Because district courts "apply the summary judgment standard to evaluate motions to compel arbitration," Air-Con, Inc. v. Daikin Applied Latin America, LLC, 21 F.4th 168, 175 (1st Cir. 2021), we recite the relevant facts in the light most favorable to Aldea-Tirado, the nonmoving party, see Robinson v. Town of Marshfield, 950 F.3d 21, 23 n.2 (1st Cir. 2020).

contain an arbitration clause. Soon after Aldea-Tirado filed this suit, however, PWC provided her and her counsel with an arbitration agreement (the "Agreement") that PWC asserted had been sent to her and to which she had consented.

The Agreement provided that "all disputes, controversies and claims relating to or arising out of [Aldea-Tirado's] . . . employment with [PWC]" would be arbitrated. The Agreement further provided that, "[b]y continuing [her] employment with [PWC] on or after [July 1, 2014], [Aldea-Tirado] will be deemed to have accepted this Agreement, and [Aldea-Tirado] and [PWC] will be bound by its terms."

Aldea-Tirado denied having received the Agreement and declined to submit her claims to arbitration. On January 3, 2022, PWC moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), Pub. L. No. 68-401, 43 Stat. 883. In support of the motion, PWC alleged that it had notified Aldea-Tirado of the Agreement by sending the Agreement: (1) as an attachment to an email that was sent to Aldea-Tirado's work email on March 31, 2014, at 12:11 p.m.; and, (2) in a letter that was sent by first-class mail to Aldea-Tirado's correct home address on March 31, 2014, via Heffler Claims Group, LLC, a notification-services firm that PWC had retained to mass-mail the Agreement to its employees.

Aldea-Tirado filed her opposition to PWC's motion to compel on January 18, 2022. She attached to her filing an

- 3 -

affidavit in which she asserted that (1) she had never been notified of a modification to her employment contract; (2) she had never received any verbal or written notice of the Agreement; and (3) she had learned of the Agreement only after the initiation of her suit. She also produced evidence that the email to which PWC asserted the Agreement had been attached did not comport with the formatting of other emails that PWC had sent to her before on similar personnel-related matters.

The District Court granted PWC's motion on September 30, 2022, after determining that PWC had established the existence of a valid agreement between PWC and Aldea-Tirado to arbitrate her claims. The District Court further determined that Aldea-Tirado had tacitly consented to the Agreement by continuing to work for PWC after having received the Agreement through both regular mail and email. In so ruling, the District Court determined that Aldea-Tirado's contention that the Agreement had been "sent to the wrong email [was] belied by the record" and that she had failed to show that she had not received the Agreement via regular mail because she had failed to rebut the presumption that a properly mailed letter that is not returned is considered to have been received. Aldea-Tirado then timely brought this appeal.

## II.

The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter

- 4 -

arising out of such contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.   Thus, courts must "treat arbitration as 'a matter of contract' and enforce agreements to arbitrate 'according to their terms.'"  Air-Con, Inc. v. Daikin Applied Latin America, LLC, 21 F.4th 168, 174 (1st Cir. 2021) (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019)).

Parties are not obliged to arbitrate, however, "when they have not agreed to do so."  Rivera-Colón v. AT&T Mobility P.R., Inc., 913 F.3d 200, 207 (1st Cir. 2019) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)).  Thus, "the party seeking to compel arbitration bears the burden of demonstrating 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, [and] that the other party is bound by that clause.'"  Air-Con, Inc., 21 F.4th at 174 (quoting Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011)).

"[S]ection 4 [of the FAA] . . . commands that district courts ordinarily apply the summary-judgment standard" in adjudicating a motion to compel arbitration.  Rodríguez-Rivera v. Allscripts Healthcare Solutions, Inc., 43 F.4th 150, 168 (1st Cir. 2022).  Accordingly, district courts must review the record in the light most favorable to the non-moving party and draw all

- 5 -

reasonable inferences in that party's favor.  See Air-Con, Inc., 21 F.4th at 175.

If the non-moving party "puts forward materials that create a genuine issue of fact about a dispute's arbitrability," id. (citation omitted), then the district court "shall proceed summarily" to trial to resolve that question, 9 U.S.C. § 4. However, the "non-moving party 'cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'"  Air-Con, Inc., 21 F.4th at 175 n.8 (quoting Soto v. State Indus. Prods., Inc., 642 F.3d 67, 72 n.2 (1st Cir. 2011)).

## III.

Aldea-Tirado first contends that the record shows that there is a genuine issue of material fact as to whether, as a matter of Puerto Rico law, she consented to the Agreement.  See Rivera-Colón, 913 F.3d at 209-14 (applying Puerto Rico contract law to determine whether there was consent to an arbitration agreement).  That is so, Aldea-Tirado maintains, because the record reveals that there is a genuine issue of material fact as to whether she received the email and also a genuine issue of material fact as to whether she received the letter, such that there is a genuine issue of disputed fact as to whether she received the Agreement at all.  But, as we will explain, we conclude, reviewing

- 6 -

de novo, see Rodríguez-Rivera, 43 F.4th at 169, that Aldea-Tirado has failed to show that there is any non-speculative basis in the record from which a reasonable factfinder could determine that she did not receive the email to which PWC asserts the Agreement was attached. Thus, Aldea-Tirado's contention that, contrary to the District Court's ruling, there is a genuine issue of disputed fact as to whether she received the Agreement necessarily fails. And, in consequence, there is no merit to her contention that, because there is a genuine issue of disputed fact as to whether she received the Agreement at all, there is a genuine issue of disputed fact as to whether she consented to the Agreement.[2]

In arguing otherwise, Aldea-Tirado contends that, on this record, there is a genuine issue of disputed fact as to whether PWC "forwarded the notification of the alleged Arbitration

---

[2] We note that Aldea-Tirado asserts in one sentence in her opening brief to us that the District Court failed to apply the summary-judgment standard in reviewing the motion to compel and that the District Court did not at any point identify the standard that it applied. But, even if we were to assume that the contention that the District Court failed to apply the proper standard in reviewing the motion is not waived for lack of development, see Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175-76 (1st Cir. 2011), our review of the District Court's ruling is, as we have explained, de novo. Moreover, we may affirm a ruling granting summary judgment on any ground manifest in the record. See Frillz, Inc. v. Lader, 104 F.3d 515, 516 (1st Cir. 1997). Thus, even if the District Court did not apply the summary-judgment standard in reviewing the motion to compel, that failure would not affect our analysis, as we conclude that Aldea-Tirado has failed to show on appeal that the District Court's ruling granting PWC's motion to compel cannot stand under the summary-judgment standard.

Agreement to [Aldea-Tirado] . . . to the wrong [email] address," as she contends that the record supportably shows that PWC did just that.  We cannot agree.

The record contains affidavits from two PWC employees who assertedly took part in the process of sending company employees via email the Agreement that PWC maintains was emailed to Aldea-Tirado.  The employees state in their affidavits that PWC used a "Lotus Notes" mail-in database to send the Agreement to its employees' email addresses.  They also explain in their affidavits that the process for sending those emails entailed uploading to the database a template that contained the text of the email, the Agreement, and a list of the employees to whom the Agreement was to be emailed as well as those employees' email addresses that PWC used in its ordinary course of business.

One of the two employees also states in his affidavit that he "observed the emailing of the [email] and the Arbitration Agreement" on March 31, 2014, and that the database kept a copy of each email and Agreement sent to each employee that includes the date and time at which the original email to each employee was sent.  In addition, PWC submitted a portion of the records from the database at issue that indicates that an email and the Agreement were sent at 12:11 p.m. on March 31, 2014, to the following address: "Jennifer Aldea Tirado/US/TLS/PwC."

Finally, PWC submitted a sworn statement from Brian Fox, a former "[p]rincipal" at PWC who specialized in "digital forensics, including e-discovery and data analysis of Lotus Notes email for legal and regulatory matters." Fox's statement asserts that, at the relevant times, Aldea-Tirado had an account in Lotus Notes for receipt of Lotus Notes emails and that the address used to "locate her account within the Lotus Notes environment" and route emails that are sent solely within the Lotus Notes environment was "Jennifer Aldea Tirado/US/TLS/PwC." Fox's statement further explains that Aldea-Tirado's Lotus Notes account, like all other Lotus Notes accounts, has an associated email address that is used to route emails from outside the Lotus Notes environment and that her account's associated external email address is "jennifer.aldea.tirado@uw.pwc.com." Moreover, Fox's statement asserts that the "Jennifer Aldea Tirado/US/TLS/PwC" address and the "jennifer.aldea.tirado@uw.pwc.com" address are both unique descriptors of the same Lotus Notes email account for emails coming from different routes, either within or without the Lotus Notes environment.

Aldea-Tirado does not point to anything in the record that directly contradicts any of this evidence. Instead, she argues that the evidence that the email with the attached Agreement was sent to "Jennifer Aldea Tirado/US/TLS/PwC@Americas-US" itself shows that the email through which she assertedly received the

Agreement was sent to the "wrong" email address. In support of that contention, Aldea-Tirado points to evidence in the record that supportably shows that the two email addresses that she asserts that she uses, and by which PWC contacted her on the same day that it assertedly sent the Agreement email, are "jennifer.aldea.tirado@us.pwc.com" and "jenniferaldea@gmail.com."

That evidence to which Aldea-Tirado directs our attention fails to create a genuine issue of material fact in the relevant respect. After all, PWC does not contest that the email that the uncontradicted evidence shows was sent was directed at "Jennifer Aldea Tirado/US/TLS/PwC@Americas-US." PWC simply asserts that the undisputed evidence shows that an email so sent would end up in the same inbox in which an email sent to "jennifer.aldea.tirado@us.pwc.com" -- the email address that Aldea-Tirado herself contends is the "correct" one -- would end up. And we do not see how PWC is wrong in so contending, given that Aldea-Tirado does not point to anything in the record that undermines the portions of PWC's evidence that bear on whether such an email would reach the inbox that even Aldea-Tirado concedes is the correct one. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (stating that summary judgment "will be appropriate if the nonmovant elects to rest upon some combination of 'conclusory allegations, improbable inferences, and unsupported speculation'" (quoting Medina-Munoz v. R.J. Reynolds

- 10 -

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990))); Tobin v. Fed. Express Corp., 775 F.3d 448, 452 (1st Cir. 2014) ("Speculation about mere possibilities, without more, is not enough to stave off summary judgment.").

That is not to deny that there is evidence that supportably shows that, on the same day that PWC sent the email in question, PWC also sent Aldea-Tirado emails to her "internet address." But, while Aldea-Tirado highlights that evidence, it does nothing to cast doubt on PWC's evidence that it sent the email to which the Agreement was attached to a different but valid email address that assertedly would deliver emails to the same inbox. Thus, the evidence on which Aldea-Tirado relies also does not create a genuine dispute of material fact on the relevant issue.[3]

For these reasons, we reject Aldea-Tirado's argument that there is a non-speculative basis from which a reasonable factfinder could find on this record that she did not receive the

_____

[3] Aldea-Tirado contends in her reply brief that PWC did not meet its initial burden of showing that she received the Agreement via email because nothing in the record supportably shows that the emails to which the Agreement was attached that were sent to the Lotus Notes addresses of employees made it to either Aldea-Tirado's inbox or the inbox of any other PWC employee in PWC's Puerto Rico offices. But, because Aldea-Tirado did not raise this argument in her opening brief, it is waived. See United States v. Jurado-Nazario, 979 F.3d 60, 62 (1st Cir. 2020). Aldea-Tirado also makes no argument that evidence tending to show that an email was sent does not always on its own suffice to establish receipt. See Eddington v. U.S. Dep't of Def., 35 F.4th 833, 839-40 (D.C. Cir. 2022).

email to which the Agreement was attached.[4]  Thus, we reject Aldea-Tirado's attempt to challenge the District Court's ruling granting PWC's motion to compel arbitration on the ground that there is a genuine issue of fact as to whether she consented to the Agreement.

**IV.**

Aldea-Tirado next contends that, as a matter of Puerto Rico law, the Agreement is not binding here because it would be unconscionable to hold her to it -- or, at the least, that there is a genuine issue of material fact as to whether it would be unconscionable to do so.  In pressing that contention below, Aldea-Tirado appears to have been resting the argument on the means by which PWC apprised her of the Agreement's existence rather than on any concern with the substance of the Agreement itself.  The District Court rejected the contention on the grounds that the email through which Aldea-Tirado received the Agreement provided fair notice of the Agreement's terms and how they would affect Aldea-Tirado's rights, that she was given sixty days to review and consider the Agreement, and that she was not threatened with

---

[4] Aldea-Tirado refers in her briefing to us to her statement in her declaration that she "never received any written or verbal notification about the" Agreement.  She does not, however, develop in her opening brief in any clear way an argument that there is a genuine dispute of material fact as to her receipt of the email to which the Agreement was attached on the ground that the assertion in her declaration itself suffices to create that dispute of fact; accordingly, any such contention is waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Jurado-Nazario, 979 F.3d at 62.

adverse employment action if she did not accept the Agreement. Aldea-Tirado now contends on appeal that the District Court erred in so ruling because (1) PWC's practice for apprising employees of personnel policies was to use "the email addresses on record" (i.e., her personal and work-internet email addresses); (2) PWC offered no evidence that it had previously used Lotus Notes to inform employees of personnel policies; (3) Brian Fox's statement "expressly shows" that PWC sent the Agreement email to the wrong address; and (4) the fact that the Agreement email did not require a response departs from PWC's standard procedure of requiring the employee to "respond" in some form to communications pertaining to personnel-policy changes.[5]

The first three of the grounds that Aldea-Tirado sets forth in challenging the District Court's ruling merely reprise her contention that she did not receive the Agreement. For the reasons we have already explained, however, her contention that the Agreement did not end up in the inbox that she concedes is the "right" one rests on purely speculative grounds. Thus, there is

---

[5] We note that Aldea-Tirado's unconscionability-based contention "specifically challenges the enforceability of the arbitration clause itself," Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 512 (1st Cir. 2020) (quoting Granite Rock Co. v. Int'l Broth. of Teamsters, 561 U.S. 287, 301 (2010)), and PWC does not argue that this question is for the arbitrator to decide. Accordingly, we proceed as though this dispute is for the court to decide.

no merit to these three grounds for challenging the District Court's ruling.

Moreover, we also must reject Aldea-Tirado's contention regarding PWC's failure to require a response to the email in question. Aldea-Tirado develops no argument that, under Puerto Rico law, the Agreement is not binding on grounds of unconscionability solely because PWC's practice had been to require responses to similar personnel-policy communications and no response was required for the email to which the Agreement was attached. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## V.

Finally, Aldea-Tirado contends, based on Campbell v. Gen. Dynamics Gov. Sys. Corp., 407 F.3d 546 (1st Cir. 2005), that the District Court erred in granting PWC's motion to compel arbitration as to her Title VII and PDA claims on the ground that she was not given "some minimal level of notice" that her "continued employment would effect a waiver of the right to pursue [those claims] in a judicial forum," id. at 555.[6] By way of

_____

[6] In her reply brief, Aldea-Tirado does contend that the District Court denied the discovery that she requested before granting PWC's motion and that such discovery could have afforded

- 14 -

background, the 1991 Civil Rights Act (CRA), Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081, provides that, "[w]here appropriate and to the extent authorized by law," arbitration is "encouraged to resolve disputes arising under the . . . provisions of Federal law amended by this title[,]" and we recognized in Campbell that the "[w]here appropriate" language in the CRA requires that, before a court compels the arbitration of certain claims, it must conduct an inquiry into whether the plaintiff was provided "sufficient notice . . . that [her] continued employment would constitute a waiver of [her] right to litigate" those claims. 407 F.3d at 553-54 (discussing Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999)).

Aldea-Tirado recognizes that Campbell described the employer's burden as "relatively light" and explained that the employer could satisfy that burden "by producing evidence demonstrating that the employee had actual notice of the agreement." Id. at 555. But Aldea-Tirado is right that there is no evidence in the record that she had actual notice of the Agreement. Moreover, Aldea-Tirado asserts in her declaration that she did not know of the Agreement's existence prior to the

---

her "an opportunity to adequately . . . challenge [PWC's] assertions." But we see no basis for departing from the well-established rule that arguments raised for the first time in a reply brief on appeal are ordinarily deemed waived. See Jurado-Nazario, 979 F.3d at 62.

- 15 -

commencement of litigation. On that basis, Aldea-Tirado contends that, under Campbell, "the sufficiency of the notice" to render her Title VII and PDA claims arbitrable "turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonably prudent employee notice of the waiver." Id. And, she contends that under Campbell's "fact-dependent" and "case-specific" inquiry -- which requires consideration of "the method of communication, the workplace context, and the content of the communication," id. at 554-56 -- there is at the very least a genuine issue of disputed fact as to whether the Campbell standard is met.

PWC argues that Aldea-Tirado misapprehends Campbell in contending that she can succeed under it on the grounds that she identifies. Specifically, PWC relies on our decision in Rivera-Colón, 913 F.3d at 214-15, to contend that, because Aldea-Tirado does not dispute that the email and attached Agreement if received provided adequate notice that certain statutory claims would be subject to arbitration, Campbell is inapposite. But, even setting that contention by PWC aside and taking Aldea-Tirado's Campbell-based challenge to the District Court's ruling granting the motion

to compel arbitration on its own terms, including the assumption that Campbell extends to the PDA,[7] we see no merit to it.

In making her "some minimal level of notice" argument, Campbell, 407 F.3d at 555 (quoting Rosenberg, 170 F.3d at 21), Aldea-Tirado appears to contend that, like the employer who sought to compel arbitration in Campbell based on an arbitration agreement that had been sent by email, (1) PWC sent the Agreement to employees via mass email; (2) the means of communicating the Agreement to Aldea-Tirado were atypical compared to the method of communicating personnel policies and amendments to contractual terms otherwise commonly employed by PWC; and (3) PWC did not require any sort of response or acknowledgement to the email by its intended recipient.  We are not persuaded.

First, PWC correctly asserts that Campbell did not establish a categorical bar to the provision of adequate notice via a mass email.  PWC emphasizes that we noted in Campbell that we could "easily . . . envision circumstances in which a

_____

[7] In Campbell, we concluded that section 118 of the CRA and our interpretation of its terms "[w]here appropriate" applied to the Americans with Disabilities Act ("ADA"), Pub. L. No. 101-336, 104 Stat. 327, because section 118 provides that it applies to "provisions of federal law amended by [the CRA]," see § 118, 105 Stat. at 1081, and the CRA had amended certain sections of the ADA, see 407 F.3d at 553 n.4.  Similarly, in our earlier decision in Rosenberg, we had determined that section 118 applied to Title VII.  See id.  We note that the PDA is part of Title VII, which was amended by the CRA and contains the "[w]here appropriate" language as well.  See 42 U.S.C. §§ 1981 (note), 2000-e.

straightforward e-mail, explicitly delineating an arbitration agreement, would be appropriate." Id. at 555-56. PWC also correctly points out that the email in question expressly stated both that it contained an arbitration agreement that effects a waiver of the recipient-employee's rights to a judicial forum and that the recipient-employee's continued employment would constitute acceptance of the proposed modifications to the employment relationship. Cf. id. at 547-48 (describing the email in question and noting the absence of language clearly identifying that a change in legal relations would be effected). We thus see no basis for concluding that there is merit to Aldea-Tirado's Campbell-based contention just because the Agreement here was sent to PWC employees via a mass email.

PWC also contends that there is no merit to Aldea-Tirado's Campbell-based contention insofar as it rests on PWC's means of notifying her of the Agreement having been atypical. PWC contends in that regard that Campbell is materially distinguishable because, in that case, the employer had a practice of making "significant alterations to the employment relationship . . . [through] conventional writings that required a signature on a piece of paper, which was then placed in a personnel file," id. at 556, thereby making the use of an email to effect such a change atypical. We agree, given that, as PWC notes, Aldea-Tirado herself

acknowledges that PWC's practice was to notify employees of personnel-policy changes through email.

PWC finally contends that, insofar as Aldea-Tirado's Campbell-based contention rests on the fact that PWC did not require a response to the email in question, it is also wrong. Here, too, we agree with PWC.

In Campbell, we expressly stated that "we do not hold that the requirement of an affirmative response is necessary . . . in every circumstance." Id. at 557. Rather, we merely noted that a requirement to provide "a response to the email" would have been one way that the employer in that case could have "set [the] particular communication apart from the crowd," given that the employer's practice was not to provide notice of changes to the employment relationship through email. Id. at 556-57.

Thus, we see no basis for crediting Aldea-Tirado's contention that the District Court's ruling cannot be sustained under Campbell. For, while Aldea-Tirado contends that the record supports a finding that "[PWC's] communication would [not] have provided a reasonably prudent employee [some minimal level of] notice of the waiver," id. at 555, she has failed to show that is the case.

**VI.**

For the foregoing reasons, we **affirm**.