# United States Court of Appeals
## For the First Circuit

No. 24-1996

PAUL PERRUZZI; JEREMIAH SULLIVAN,

Plaintiffs, Appellees,

v.

CAMPBELL SOUP COMPANY; SNYDER'S-LANCE, INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Rikelman, Circuit Judges.

Zachary D. Tripp, with whom Jacob R. Altik, Robert B. Niles-Weed, Weil, Gotshal & Manges LLP, Sari M. Alamuddin, Joshua M. Adler, and Morgan, Lewis & Bockius LLP were on brief, for appellants.

Sarah Varney, with whom Benjamin C. Rudolf and Rudolf, Smith, Griffis & Ruggieri, LLP were on brief, for appellees.

March 4, 2026

**GELPÍ**, **Circuit Judge**.    Plaintiffs-Appellees Paul Perruzzi ("Perruzzi") and Jeremiah Sullivan ("Sullivan") (collectively, "Appellees" or "Perruzzi and Sullivan") sued Defendant-Appellant Snyder's-Lance, Inc. ("Appellant" or "S-L") in federal court.    S-L then moved for a stay and to compel arbitration under Sections 3 and 4 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4.    Appellees opposed that request, arguing that Section 1 of the FAA exempts them from any obligation to arbitrate because their relevant agreements are contracts of employment with transportation workers.  See id. § 1.  The district court squarely rejected Appellees' argument and stayed the proceedings because it was "not at all clear that [the FAA] applies at all."  And the district court acknowledged that it was "operating under Massachusetts law."  Although it stayed the proceedings, the district court did not compel the parties to arbitrate.  Instead, it said:

> I don't compel anyone to do anything, what I'm doing is closing the doors to this court.  [The case] will be stayed, but more than stayed, it will be administratively closed.

On October 10, 2024, the district court filed an order for closure "without entry of judgment," noting that "[t]he case may be reopened upon motion by any party demonstrating that the above-entitled impediment to trial has been removed."  S-L appealed, asking us to reverse the district court's decision.

- 2 -

Opposing S-L's appeal, Appellees urge us to remand so the district court can reconsider their argument pursuant to Section 1 of the FAA.

For the following reasons, we **vacate and remand** for further proceedings consistent with this opinion.

## I. BACKGROUND[1]

Perruzzi and Sullivan each own a snack food company: Quality Snack Foods LLC and Sully's Snacks, Inc., respectively. Perruzzi and Sullivan, through their companies, work as independent distributors for S-L,[2] another food snack company. Their economic relationships with S-L span well over a decade.

### A. The January 2013 Action

Back in January 2013 -- before this action commenced -- Perruzzi and Sullivan were part of a class action lawsuit of independent distributors against S-L's corporate

---

[1] "Because district courts apply the summary judgment standard to evaluate motions to compel arbitration, we recite the relevant facts in the light most favorable to [Perruzzi and Sullivan], the nonmoving part[ies]." Aldea-Tirado v. PricewaterhouseCoopers, LLP, 101 F.4th 99, 102 n.1 (1st Cir. 2024) (quotation marks and citations omitted).

[2] S-L is an indirect subsidiary of The Campbell's Company ("Campbell's"), formerly known as Campbell Soup Company. Appellant Campbell's -- the indirect corporate parent of S-L -- has no direct relationship with Perruzzi or Sullivan or S-L's distribution business. Campbell's acquired S-L and its subsidiaries in 2018.

predecessor. In that suit, the class members alleged that they should have been classified as employees and not independent contractors.

That class action ultimately ended in a settlement. In 2016, both Perruzzi and Sullivan opted in to the class action settlement agreement (the "Settlement Agreement"), settling their claims for $12,300.34 and $14,949.54, respectively. To do so, they had to complete a Class Action Response Form, on which they could choose to opt in, object to, or exclude themselves from the Settlement Agreement. For those class members who did not want to exclude themselves from the settlement, the Class Action Response Form provided another -- and ostensibly optional -- election: In exchange for agreeing to a Dispute Resolution Provision (the "Arbitration Provision"), the class members would receive a $3,000 payment. In particular, the Class Action Response Form said:

> I have read the enclosed [Arbitration] Provision and elect to proceed as follows (check only one below box):
> ☐ I, on behalf of myself and any business entity owned, in whole or in part, or operated by me, agree to resolve all future disputes with S-L and/or pertaining to the current Distributor Agreement with S-L pursuant to the [Arbitration] Provision attached to the Class Action Settlement Notice, which [Arbitration] Provision shall amend and be incorporated into the Distributor Agreement with S-L. I understand that I will receive a $3,000 payment, and other good and valuable consideration, in exchange for this agreement.
> ☐ I do not agree to resolve all future disputes pursuant to the [Arbitration] Provision

- 4 -

> attached to the Class Action Settlement Notice.  I understand that I will <u>not</u> receive a $3,000 additional payment.

(Third emphasis added.)  There is no dispute that both Perruzzi and Sullivan checked the first box and bound themselves to the terms of the Settlement Agreement and corresponding Dispute Resolution Provision.

## B. The Instant Action

Years after Perruzzi and Sullivan entered into the Settlement Agreement, they hauled S-L back to federal court.  This time, they were representatives of a putative class action lawsuit asserting wage and misclassification claims.  Perruzzi and Sullivan again sought relief for S-L allegedly "misclassif[ying] them as independent contractors," which, they argued, deprived them of "wages, overtime compensation, and other damages."

In August 2024, S-L moved to stay the case and compel arbitration under the FAA, pointing to the Arbitration Provision by which Appellees had agreed to be bound.

In its motion to compel arbitration, S-L contended that Perruzzi and Sullivan's claims must be resolved in arbitration because they fit squarely within the arbitration provisions of the Settlement and Distributor Agreements the parties signed.  S-L maintained that the FAA mandates arbitration here, that the parties have valid and enforceable agreements to arbitrate, and that the Distributor Agreements are not exempt from the FAA.  Perruzzi and

Sullivan, in their opposition to S-L's motion to compel arbitration, asserted a single argument -- that they are exempt transportation workers under Section 1 of the FAA.

The district court held a hearing on the motion in October 2024, during which it granted S-L's motion to stay the proceedings but declined to rule on the motion to compel arbitration. The court also rejected Appellees' Section 1 exemption argument. As the district court put it, it was not "compel[ling] anyone to do anything" and instead was "closing the doors to this court." So, the district court stayed the case and, over S-L's objections, "administratively closed" it. The court then stated that the case could be reopened following the fulfillment of one of four conditions. First, the case could be reopened following the "conclusion of any arbitration." Second, the case could be reopened -- and then dismissed -- if six months passed without the parties having arbitrated. Third, Appellees could seek to reopen the case if S-L were to "obstruct[] the arbitration." And fourth, the case could be reopened "if the arbitrator were not to go forward on th[e] basis" of a request for class arbitration. The district court then filed an order for closure "without entry of judgment."

S-L timely appealed.

## II. DISCUSSION

### A. Jurisdiction

At the threshold, we face the question of whether the district court's order for closure "without entry of judgment" is appealable to this Court. Although the parties agree we have appellate jurisdiction under 9 U.S.C. § 16, we have an independent and unflagging obligation to confirm so. See WM Cap. Partners 53, LLC, v. Barreras, Inc., 975 F.3d 77, 81 (1st Cir. 2020). S-L asserts appellate jurisdiction on three grounds: (1) 9 U.S.C. § 16(a)(1)(A)-(B); (2) 9 U.S.C. § 16(a)(3); or, in the alternative,(3) this Court's mandamus power under 28 U.S.C. § 1651. Because we have jurisdiction under the first ground, we do not address Appellant's remaining arguments for jurisdiction.

Federal courts of appeals "have jurisdiction of appeals from all final decisions of [federal] district courts." 28 U.S.C. § 1291. Thus, with few exceptions, courts of appeals lack jurisdiction over interlocutory appeals from district court orders issued before a final judgment. Johnson v. Jones, 515 U.S. 304, 309 (1995). The FAA carves out one of these exceptions to the finality requirement, providing that an appeal may arise from an order "denying a petition . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). We find ourselves with jurisdiction under this exception.

Whether a district court declined to compel arbitration is usually an easy tell.  Not so here.  The district court did not compel arbitration -- and, indeed, entered no order expressly addressing the request.  Yet it administratively closed the case, leaving the parties in seeming litigation limbo.  The jurisdictional question, then, is whether the district court "den[ied]" S-L's request to compel arbitration such that we have jurisdiction to review.  See id.

Where a district court fails to expressly grant or deny a motion, our sister circuits have "look[ed] to the proceedings and rulings to determine if they evidence a clear intent" with respect to the matter.  Cf. McCaskill v. SCI Mgmt. Corp., 298 F.3d 677, 679 (7th Cir. 2002) (finding a case was dismissed, despite no order explicitly indicating such, by looking to the intent of the district court).[3]  Similarly, when addressing whether there was even a motion to compel that could be denied, courts have said that

> The substance of a motion and order, and not its form, determines its appealability.  To determine whether an order is one that, in substance, declines to compel arbitration, courts have examined the label and the operative terms of the district court's order,

[3] Although McCaskill presents different facts from those here, both cases reflect instances where the district court failed to make its ultimate determination clear, resulting in uncertainty with respect to the circuit court's appellate jurisdiction.  We find the reasoning of our sister circuit persuasive and approach the case before us using similar reasoning.

as well as the caption and relief requested in the underlying motion.

Henry ex rel. BSC Ventures Holdings, Inc. v. Wilmington Tr. NA, 72 F.4th 499, 505 (3d Cir. 2023) (citation modified) (establishing jurisdiction where a defendant's motion to dismiss was interpreted as a motion to compel arbitration in substance and was thus reviewable). We think our sister circuits' approaches are on point here and proceed along similar reasoning. If this Court finds that the district court in substance "denied a motion to compel arbitration, then [it] will exercise jurisdiction." Id.; cf. Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 5 (1st Cir. 2004) (finding a final appealable order existed despite the district court's refusal to either dismiss the case or leave all the issues to alternative dispute resolution).

Applying that standard here, we have jurisdiction to review S-L's appeal. Although there was no order explicitly denying S-L's motion to compel arbitration, the district court made clear that it intended to deny the motion when it said, "I don't compel anyone to do anything, what I'm doing is closing the doors to this court." The district court then administratively closed the case with no real plans to revisit it. While the district court proposed various conditions for reopening, none of these scenarios involved the court eventually granting or denying the motion to compel. Indeed, even if the case were reopened on

the condition that no arbitration was sought, the court indicated that it would dismiss the case rather than grant the motion to compel arbitration. Looking at the operative terms of the district court's decision, which "[took] no action on [the motion]," we interpret it as denying said motion. See Henry, 72 F.4th at 505. Moreover, the district court gave no indication that there was some other event that could happen after which the motion to compel would be addressed. Cf. Taylor v. Pilot Corp., 955 F.3d 572, 578-79 (6th Cir. 2020) (finding no appellate jurisdiction where the district court dismissed a motion to compel arbitration without prejudice while conducting discovery on the issue of "whether a valid arbitration agreement exists").

As such, we have jurisdiction under 9 U.S.C. § 16(a)(1)(B) because the district court denied S-L's motion to compel arbitration. However, it did so without explanation. Because the district court failed to explain the basis for its denial of the motion to compel arbitration, we vacate its denial and remand for further proceedings. On remand, the district court must determine whether to grant or deny that motion and explain the basis for its decision. To inform the court's decision, we offer the following guidance.

As we are remanding, we think it prudent to address the procedural irregularities that generated this jurisdictional tangle. Where disputes arise after parties have agreed to

arbitrate, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The use of "shall" in this statute "creates an obligation impervious to judicial discretion," Smith v. Spizzirri, 601 U.S. 472, 476 (2024), and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

### B. A Legal Primer on the FAA

The FAA lies at the center of this appeal, so we begin with a brief primer on its statutory framework. Congress enacted the FAA in 1925 as a "response to [the] hostility of American courts to the enforcement of arbitration agreements." Cir. City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). In line with its Congressional purpose, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." Id. Section 2 of the FAA outlines its mandate declaring that an "arbitration agreement in 'a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Oliveira v. New Prime, Inc., 857 F.3d 7, 12 (1st. Cir. 2017), aff'd, 586 U.S 105, 121 (2019) (omission in original) (quoting 9 U.S.C. § 2). Sections 3 and 4 of the FAA support Section 2's charge. Under Section 3, parties may pursue

- 11 -

a stay of federal litigation pending arbitration, and it may be granted if the suit is indeed "referable to arbitration under such an agreement." 9 U.S.C. § 3. And Section 4 provides that parties may file a motion in the district court to compel arbitration. See id. § 4.

Despite the wide directive of the FAA, Section 1 limits its scope by excluding from the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Id. § 1. "The Supreme Court has interpreted this section to 'exempt[] from the FAA . . . contracts of employment of transportation workers.'" Oliveira, 857 F.3d at 12 (quoting Cir. City Stores, Inc., 532 U.S. at 119).

Here, the district court found that the Section 1 exemption did not apply to the parties, flatly rejecting Appellees' single argument on the merits. Because Appellees failed to appeal the district court's Section 1 determination, we leave it for the district court to reconsider on remand.

**C. The Contract Terms Require Individual Arbitration**

In the event the district court were to determine that the parties must arbitrate their claims, the issue of whether the FAA compels the parties to individual or class arbitration would then be presented. While the district court did not compel arbitration, it suggested to the parties that if they chose to

pursue arbitration, they could pursue class arbitration. We see it otherwise and think it prudent to restate the relevant law regarding choice of arbitration for the district court to consider on remand.

As already stated, arbitration is set out "in accordance with the terms of the agreement." 9 U.S.C. § 4. The words "terms of the agreement" in this provision favor acceptance of terms which dictate a particular type of arbitration. See AT&T Mobility v. Concepcion, 563 U.S. 333, 344 (2011) (reinforcing that "parties may agree . . . to arbitrate according to specific rules, . . . and to limit with whom a party will arbitrate its disputes" (citations omitted)).

Here, the parties agreed to individual arbitration for "all claims and disputes relating to any allegation of any employment, franchise or other non-independent contractor relationship or misclassification." So, in the event the district court were to compel arbitration, because all parties to the appeal knowingly contracted into an agreement where individual arbitration was a mandatory condition, the order to compel would require the parties to proceed as such, in alignment with the conditions set out in the Settlement Agreement.

### III. CONCLUSION

For the reasons stated above, we **vacate and remand** for further proceedings consistent with this opinion.